691 A.2d 742

**Helen N. DROLSUM, et vir**

**v.**

**David W. HORNE, et al.**

**No. 1098, Sept. Term, 1996.**

Court of Special Appeals of Maryland.

March 31, 1997.

Glen M. Fallin, Westminster, for appellants.

Laurell E. Taylor, Senior Assistant County Attorney, Westminster, for appellee, County Commisssioners for Carroll County.

Thomas F. Stansfield, Westminster, for appellees, Horne and Jung.

Argued before DAVIS, EYLER and THIEME, JJ.

THIEME, Judge.

This is an appeal from the Circuit Court for Carroll County (Beck, J.) wherein the court granted summary judgment in favor of appellees, thereby compelling a conveyance pursuant to the terms of an executed deed.

## FACTS

In 1974, Alton and Helen Drolsum acquired from John D. Hannon residential property along Babylon Road in Carroll County. Reservation was made of a strip of land thirty feet wide for the subsequent conveyance to Carroll County for road purposes. An unimproved driveway traverses the Drolsum property and connects to a nearby parking area. A second, smaller unimproved lane, herein referred to as a "machinery lane," lies adjacent thereto.

The Drolsums allege that on 29 June 1990 a pickup truck registered to David Horne, a neighbor of the Drolsums, was driven down the machinery lane by either Horne or his brother-in-law, Phillip Jung, without the consent of the Drolsums. On this basis, the Drolsums filed a civil complaint alleging trespass and seeking, *inter alia*, $10.00 in nominal damages, $200,000 in compensatory damages, and $100,000 in punitive damages from each defendant.

The Hornes maintained a mailbox on the strip of land originally reserved by the grantor for widening Babylon Road. In their third amended complaint filed on 24 October 1992, the Drolsums alleged a trespass against the Hornes as a result of the placement of said mailbox upon land claimed by the Drolsums and therein sought $10.00 in nominal damages, $200,000 in compensatory damages, and $100,000 in punitive damages. In actuality though, legal title to the land was held at that time still by Hannon.

On 9 February 1993, Hannon issued a supplemental deed to the Drolsums, extinguishing the reservation held by Hannon and granting the strip of land to the Drolsums. The result of this action by Hannon is that from the date of the supplemental deed forward, the Drolsums were to enjoy possession of the entire 1974 conveyance in fee simple. The Drolsums timely recorded the deed among the land records of Carroll County. The record reflects that during the pendency of that action the Drolsums attempted to tamper with or remove the Hornes' mailbox.[1]

By order of the circuit court, on 19 August 1993, the Board of Commissioners of Carroll County (Carroll County) were joined to the action as necessary plaintiffs. Carroll County filed a motion to dismiss and included, in support thereof, the affidavit of Howard Noll, Chief of the Carroll County Bureau of Engineering, which reflected that the County then had no interest in the strip of land that was originally reserved by Hannon. The motion was denied.

Additional facts will be supplemented as necessary.

Appellants present for our review the following issues, as paraphrased:

1. Whether the lower court erred in issuing an order compelling appellants to convey an interest in land to appellee, Carroll County.

2. Whether the Carroll County Board was properly joined as a necessary party to the instant action.

3. Whether the lower court erred in granting appellees' motion for partial summary judgment without a hearing.

4. Whether the lower court erred in issuing, *sua sponte*, an injunction restraining appellants from removing appellees' mailbox.

---

1. 18 U.S.C. § 1705 (1996 Supp.) mandates penalties of up to three years incarceration for this type of conduct.

5. Whether the lower court erred in denying appellants' motion to compel disclosure to appellees' telephone records.

6. Whether the trial court's actions constitute prejudicial conduct to the extent that appellants' right to due process was violated.

## DISCUSSION

The genesis of this appeal revolves around the Hornes' erection of a mailbox that allegedly encroached upon the Drolsums' property. To compound the harm, Mr. Horne or his brother-in-law, Phillip Jung, allegedly drove down a machinery lane owned by the Drolsums.[2]

"Question —— When should an attorney say "no" to a client?

Answer —— When asked to file a lawsuit like this one."

\* \* \*

"In our puzzlement as to how this case even found its way into court, we are reminded of the words of a romantic poet.

'The [law] is too much with us; late and soon,

Getting and spending, we lay waste our [judicial] powers:

We have given our hearts away, a sordid Boon!'

(Wordsworth, *The World Is Too Much With Us* (1807) with apologies to William Wordsworth, who we feel, if he were here would approve.)"

*McDonald v. John P. Scripps Newspaper,* 210 Cal.App.3d 100, 257 Cal.Rptr. 473 (2 Dist.1989).

The Drolsums have embarked on a hunt, seeking to capture the prey who has dared to cross them both in real estate and in principle.

---

**2.** The Drolsums pursued criminal trespass charges against Horne for this action. He was found not guilty.

## I & II

Before reaching the legal issues posed by this assertion, we think it necessary to address the issue of whether the Drolsums' had standing to bring a trespass action for the alleged trespassory placement of the Hornes' mailbox. At the time of the complaint, Hannon, not the Drolsums, had legal title of the reserved strip of land. Inasmuch as the Drolsums have conceded that this issue was not raised below, and thus not preserved for this Court's review, we need not address it. *See* Maryland Rule 8-131(a).

The product of this waived misjoinder is that the Drolsums were ultimately ordered to convey to the County the strip of land which was transferred to them via the supplemental deed. The Drolsums submit that this was improper because in the County's initial motion to dismiss, it expressed that it had no interest in the strip of land reserved by Hannon. This argument shoddily ignores the true error manifested by the ordered conveyance; that according to the terms of Hannon's deed and supplemental deed, the County *never* had an interest in the strip of land. Our judicial oath to promote fairness and equity compels us to advocate for the just solution to this problem, though this analysis will likely be a matter of first impression to the Drolsums' counsel.

█ In interpreting a deed whose language is clear and unambiguous on its face, the plain meaning of the words used shall govern without the assistance of extrinsic evidence. *See generally Mims v. Armstrong*, 31 Md. 87 (1869) (in construing a deed all words should be considered).

Contained within the original deed executed by Hannon was the following language:

> Saving and Excepting, however, all that strip or portion of the afore described parcel that lies within a distance of thirty (30) feet of the centerline of the existing road bed of Babylon Road, said strip being hereby expressly reserved by [Hannon], his heirs and assigns, for [the] purpose of widening said road and the conveyance thereof to the County Commissioners of Carroll County . . . All, however, with-

out any obligation and with the absolute discretion of the seller. . . .

(Emphasis added.)

The supplemental deed extinguished the Hannon's reservation by use of the following language:

> The purpose and effect of the instant supplemental deed shall be to modify the above-described deeds of May 6, 1974, and May 23, 1974, so as to extinguish [Hannon]'s reservation of the thirty foot strip. . . .
>
> TO HAVE AND TO HOLD the above-described 30–foot strip of ground . . . to the proper use and benefit of the said ALTON RAYMOND DROLSUM and HELEN N. DROLSUM, his wife, as tenants by the entireties. . . .

(Emphasis added.)

■ We think it unequivocally clear that Hannon held legal title to the reservation until such time as he conveyed to the Drolsums via the supplemental deed. At no time whatsoever did Carroll County have title to the reserved strip of land. It was therefore error for the lower court to compel the conveyance as it did.

## III

■ The Drolsums aver that it was error for the lower court to grant the Hornes' motion for summary judgment with respect to damages absent a hearing when one was duly requested in the original motion. In support of this position, they rely on Maryland Rule 2–311(f), which states in pertinent part:

> (f) **Hearing—Other Motions.—** . . . Except when a rule expressly provides for a hearing, the court shall determine in each case whether a hearing will be held, but it may not render a decision that is dispositive of a claim or defense without a hearing if one was requested as provided in this section.

Omitted from their authority, however, is subsection (b) of the Rule, which states in pertinent part:

**(b) Response.**—... If a party fails to file a response required by this section, the court may proceed to rule on the motion.

Damages are not dispositive of a claim or defense. The provisions of subsection (f) are therefore not invoked. Under subsection (b), the trial court properly exercised its discretion in ruling on the motion, because the Drolsums failed to respond to the Hornes' motion for summary judgment on this basis.

## IV

The circuit court, acting *sua sponte,* issued an order enjoining the Drolsums from (re)moving the Hornes' mailbox, and therein stated:

"Upon this Court's *sua sponte* review of this matter, we have determined that the rights of Defendants, David Horne and Carol Horne, to maintain their mailbox in its present location are at issue in this case. This Court is aware that Plaintiffs have moved the mailbox in the past because this Court entered an injunction regarding the same issue in another proceeding in the Circuit Court for Carroll County.... We ... desire to preserve the *status quo* until the issue is resolved in this litigation."

Although the injunction was not objected to below, the Drolsums insist that this moratorium on this potentially trespassory conduct violates their due process rights. We need not render an opinion as to the merit of this argument, inasmuch as to the specific incident it was waived. *See* Maryland Rule 8–131(a).

We note, however, that the effect of our reversal of the trial court's order directing the Drolsums to convey the property is to return the Drolsums to the status of owners in fee simple, fully capable of initiating future ejectment or trespass actions against those, including appellees, who continue to maintain a mailbox on the Drolsums' property.

## V

During discovery, the Drolsums sought to produce from appellee Jung:

> "[a]ll records of long-distance telephone calls [that] originated from or otherwise were charged to the residence of Defendant Jung during the period from June 29, 1990 through August 21, 1990."

Within the context of Horne's criminal trial on charges of trespass, appellee Jung testified that it was he, not appellee Horne, who inadvertently drove onto the machinery lane belonging to the Drolsums. In their motion to compel discovery, the Drolsums represented that they were "nevertheless convinced, based on their personal observation of the trespass of that date, that Defendant David Horne, not Defendant Jung, was the trespasser, and that Defendant David Horne committed the trespass knowingly and maliciously, as part of a campaign of harassment of the Drolsums. . . . "

Here, the putative hunter seeks to fortify his arsenal by not only adding to the caliber of his weapon, but also by handicapping his prey. But for the existence of a level playing field, a game is not a game, it is an exhibition. The trial court did not tolerate such grievous exhibitions. It as well as this Court must insure the triumph of fundamental fairness and equity, and must not allow a party to be burdened unreasonably by irrelevant and onerous requests by opposing counsel. The trial judge properly denied the Drolsums' motion to compel and thereby insured a level playing field in the litigation arena.

 Maryland Rule 2–401 allows for the discovery of material *legitimately* relevant to a pending action in hopes of expediting litigation. *See Barnes v. Lednum,* 197 Md. 398, 79 A.2d 520 (1951).[3] A trial judge has the discretion to limit the

---

3. Given that one might believe this request to be harassing in nature, or as being brought in less than good faith, appellant's counsel ought be mindful of the provisions set forth in Maryland Rule 1–341 and 2–433, so as not to himself become the hunted in collateral matters.

scope of discovery in order to prevent its employment in an abusive fashion. *Blades v. Woods,* 107 Md.App. 178, 184, 667 A.2d 917 (1995). Assuming *arguendo* that this request poses any merit to the claims before the circuit court, that merit can only relate to the earlier dismissed count alleging civil conspiracy, inasmuch as the Drolsums do not take issue with the merits of the lower court's disposition of the civil trespass claim.

## VI

■ Appellants also allege that they were unduly prejudiced by the trial court's action, which caused a violation of their due process rights and denied them the opportunity to receive a fair trial.

As we pointed out in *Wagner v. Wagner,* 109 Md.App. 1, 23–25, 674 A.2d 1 (1996):

Just what process is due is determined by an analysis of the particular circumstances of the case, including the functions served and interests affected. Due process, however, does not mean that a litigant need be satisfied with the result. . . . Indeed, it is sufficient if there is at some stage an opportunity to be heard *suitable to the occasion* and an *opportunity* for judicial review at least to ascertain whether the fundamental elements of due process have been met. Moreover, with respect to legal issues, due process does not even necessarily require that parties be given an opportunity to present argument.

Due process, thus, is a flexible concept that calls for such procedural protection as a particular situation may demand. It does not require procedures so comprehensive as to preclude any possibility of error. Stated another way, due process merely assures *reasonable* procedural protections, appropriate to the fair determination of the particular issues presented in a given case. . . . Therefore, the asserted denial of due process is to be tested by an appraisal of the totality of the facts in a given case. Notably, there is no

requirement that actual prejudice be shown before denial of due process can be established.

Once it is determined that an interest is entitled to due process protection, the pertinent inquiry then becomes what process is due, a determination that requires consideration and accommodation of both government and private interests; a balancing of the various interests at stake. Plainly stated, due process is not to be evaluated in a vacuum. Its purpose is to assure basic fairness of procedure and, if departure from procedure results in unfairness, it may be said to deny due process; if no unfairness results, there is no denial of due process. (Citations omitted.)

With these considerations in mind, we turn to the present case. It appears that appellants, under cover of night, have once again lit their torches and summoned their hounds to pursue their newest source of discontent. Having now encountered a new scent to track, the hounds and their masters, confident that this prey will not evade them, rekindle the flame of their conspiratorial vigil and follow an all too familiar trail. The prey of old, the neighbors who allegedly conspired against the Drolsums and were granted summary judgment in an earlier action, proved to be far too fleet and elusive to track. The hunters ponder: "Perhaps the true target is cloaked in a black robe." We, like a postman, repel the hounds with a can of judicial mace.

We are able to find in the record below not the faintest scent, not the barest outlines of any footprints that even remotely support this reckless contention now made by the Drolsums. The issued is waived. *See* Md. Rule 8–131(a).

## CONCLUSION

And so it is written, and so it is done, this case might well have concluded before it begun. The hounds now rest, though without their sought after prey. Perhaps when daylight dawns, all neighbors will be left in peace.

The hunter may still want his prize, which is certainly nothing new, though the hunter will now be the hunted, in carrying the burden of obtaining further appellate review.

**JUDGMENT ORDERING ALTON AND HELEN DROLSUM TO CONVEY THE ABOVE REFERENCED 30–FOOT STRIP OF LAND VACATED.**

**ALL OTHER JUDGMENTS AFFIRMED.**

**COSTS TO BE SHARED EQUALLY BY THE PARTIES.**