45 A.3d 749

ANNAPOLIS ROADS PROPERTY OWNERS
ASSOCIATION, et al.

v.

Thomas C. LINDSAY, Sr., et al.

No. 1380, Sept. Term, 2010.

Court of Special Appeals of Maryland.

June 4, 2012.

272

D. Christopher Ohly (Schiff Hardin, LLP, on the brief), Washington, D.C., for Appellant.

Linda M. Schuett (Linowes and Blocher, LLP, on the brief), Annapolis, MD, for Appellee.

Panel: MATRICCIANI, WATTS and JAMES R. EYLER (Retired, Specially Assigned), JJ.

WATTS, J.

This appeal involves conflicting claims of ownership over a ten-foot strip of land (the "Strip")[1] located between Lots 18, 19, 20, and 21 of the Annapolis Roads subdivision located in Annapolis, Maryland. The Circuit Court for Anne Arundel County granted a motion for summary judgment in favor of Thomas C. Lindsay, Sr. and The Thomas C. Lindsay, Sr. Revocable Trust (the "Lindsay Trust"), appellees, and against the Annapolis Roads Property Owners Association ("AR-POA"), Stanley and Barbara Samorajczyk, and Margaret Tal-

---

1. The circuit court described the Strip as being approximately 10 feet wide and 116.6 feet long, beginning at Carrollton Road and running between Lots 19 and 20 for the first 100 feet of its length. The remaining 15 feet of the Strip extends beyond the back lot lines of Lots 19 and 20, where it connects at the end of Lots 18 and 21, creating a triangle between Lots 18 and 21. See attached Plat, filed September 18, 1928.

Carrollton Road is spelled "Carrolton Road" in some deeds in the record. For consistency, we will refer to it as Carrollton Road.

bot, appellants.[2] The circuit court issued two declaratory judgments, both of which are at issue in this appeal. In the first Declaratory Judgment, the circuit court declared that ARPOA holds no right, title, or interest in the Strip "binding" upon Lots 18, 19, 20, and 21 of the Annapolis Roads subdivision. In the second Declaratory Judgment, the circuit court declared that the Lindsay Trust holds all right, title and interest in the Strip "binding" upon Lots 18, 19, 20, and 21 of the Annapolis Roads subdivision, *"subject, however, to* an easement appurtenant to Lot No. 18, [owned by the Samorajczyks] . . . to use the 152' Right of Way for ingress and egress to Carrollton Road." [3]

Appellants noted an appeal raising three issues, which we have rephrased and consolidated into one: [4]

I. Whether the circuit court erred in 2009, by granting summary judgment in favor of appellees and declaring that ARPOA owns no interest in the Strip, and in 2010, by granting summary judgment and declaring that the

---

2. In the circuit court, ARPOA, the Samorajczyks, Margaret Talbot, John Talbot, and William and Elizabeth Ochs were plaintiffs. On appeal, only ARPOA, the Samorajczyks, and Margaret Talbot are appellants.

3. The circuit court describes this easement as the second part of the Strip that is in dispute. The circuit court stated that the easement was created in 1962 when the owners of Lot 18 reserved an easement over a narrow piece of the Strip conveyed to the owners of Lot 19, and that easement connects the Strip to the relocated boundary of Lot 18.

4. Appellants phrased the issues as follows:
 I. Whether the trial court erred when it granted summary judgment to the Appellees and held, in its August 2009 partial Judgment, that ARPOA owns no interest in the Carrollton Road Extension at issue in this case?
 II. Whether the trial court erred when it granted summary judgment to the Appellees and ignored the effect of Equitable's mortgage on "Belmont Farms," which applied to the Extension and which was never released prior to the first conveyances of Lots 19 and 20.
 III. Whether the trial court erred when it granted summary judgment to the Appellees and held, in its July 2010 Second Declaratory Judgment that The Thomas C. Lindsay, Sr. Revocable Trust, holds all right, title and interest in and to the Carrollton Road Extension?

Lindsay Trust holds all right, title and interest in and to the Strip?

We answer this question in the negative, and, as such, we affirm the circuit court's August 10, 2009, grant of summary judgment and declaratory judgment, and the June 29, 2010, grant of summary judgment and declaratory judgment.

Appellees filed a cross-appeal raising four issues, which we have rephrased and consolidated into one: [5]

I. Whether the circuit court erred in finding that the Strip is subject to an easement appurtenant to Lot 18 to use the Strip for ingress and egress to Carrollton Road?

We answer this question in the negative. We, therefore, affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1925, the Annapolis Roads subdivision, then known as "Belmont," was conveyed to The Armstrong Company by Rella Abell Armstrong. In 1927, The Armstrong Company entered into an agreement with The Munsey Trust Company regarding the Annapolis Roads subdivision. The agreement, dated November 22, 1927, required The Munsey Trust Company to develop the community and make payments on a proposed mortgage in favor of The Equitable Company ("Equitable"). This agreement required that the following lan-

---

5. Appellees phrased the issues thus:
 I. Whether any easement appurtenant to Lot 18 is extinguished because Lot 18 no longer exists and the Samorajczyks may not use any easement that ran to Lot 18 in their capacity as the owners of other lots.
 II. Whether the first conveyance of Lot 18 by reference to the plat created an easement by implication when the plat itself does not contain any words that demonstrate the existence of an easement.
 III. Whether any easement on the strip created by the first conveyance of Lot 18 by reference to the plat is limited to the ½ of the strip that borders on Lots 18 and 19.
 IV. Whether the implied easement created by the first conveyances of Lots 18 and 21 was an easement by necessity that has since been extinguished because the necessity for the easement has ceased.

guage be included in all subsequent deeds for sale of property in the Annapolis Roads subdivision:

The ARMSTRONG CORPORATION especially reserves all riparian rights appurtenant to the land as well as the beds of all roads, lakes and ponds, and agrees to construct roadways of approved type as indicated on the plat and survey made by Olmstead Brothers and recorded in the land records of Anne Arundel County, Maryland; and to set aside certain beaches and public parks as indicated on said plat for the perpetual use of the residents of Annapolis Roads.

In 1927, Equitable, as mortgagee, lent the Annapolis Roads Company ("ARC") $250,000. ARC conveyed fee simple title to Equitable with a grant of possession to ARC, until default of the loan, upon which event Equitable would possess the property.[6] The December 2, 1927, Mortgage contained the following language:

This mortgage, made this second day of December in the year nineteen hundred and twenty seven, by and between [ARC], a corporation of the State of Maryland, party of the first part, and the Equitable Company of Washington, a corporation of the State of Delaware, party of the second part;

Whereas [ARC] is justly indebted unto [Equitable] in the amount of Two Hundred Fifty Thousand Dollars ($250,-000.00) with interest at the rate of six per cent (6%) per annum, payable semi-annually, in witness whereof [ARC] has given unto [Equitable] one certain promissory note of even date for Two Hundred Fifty Thousand Dollars ($250,-000.00), bearing interest at six per cent (6%) per annum, payable semi-annually, principal due and payable five (5) years from date, and wishes to better secure the punctual payment of said note by the execution of this mortgage, which was a condition precedent to the making of said note.

---

6. By deed dated December 2, 1927, The Armstrong Company conveyed the remaining 341 acres of the community to ARC.

Now this mortgage witnesseth that in consideration of the premises and of the sum of Ten Dollars [ARC] does grant unto [Equitable], in fee simple, all that piece or parcel of ground situate, lying and being in Anne Arundel County, State of Maryland, and described as follows, to wit: All that tract of land, containing three hundred and forty one acres, more or less, known as "Belmont," situated near Annapolis and at or near the mouth of the Severn River, in the Second Election District of Anne Arundel County, Maryland, which was conveyed unto [ARC] by The Armstrong Company, a corporation of the State of Maryland, by deed made and delivered on the Second day of December, 1927, in which deed further reference to the chain of title and to the said property set forth, being also the identical property which was granted and transferred to the said The Armstrong Company by Rella Abell Armstrong, trustee by deed dated December 22, 1925, and recorded among the Land Records of said County in Liber W.M.B. No. 23 folio 32; and being also the identical property which is described by metes and bounds, . . . and distances, in the deed thereof from David R. Randall, et al., to Paul Armstrong, dated November 13, 1907, and recorded among the Land Records aforesaid in Liber G.W. No. 57 folio 338, to which deed reference is here made for the purpose of making the said description of these presents as fully as though incorporated herein.

Together with the building and improvements thereon and the rights, roads, ways, waters, privileges, appurtenances and advantages, thereto belonging or in anywise appertaining.

To Have and to Hold the aforesaid parcel of ground and premises unto and to the proper use and benefit of [Equitable], its successors and assigns forever.

Provided, that if [ARC] or its successors or assigns, shall well and truly pay or cause to be paid the aforesaid sum of Two Hundred Fifty Thousand Dollars ($250,000.00), and all the interest thereon accrued, when and as the same may be due and payable, and shall perform all the covenants herein

on their part to be performed, then this mortgage shall be void.

And it is agreed that, until default be made in the premises, [ARC] shall possess the aforesaid property when paying in the meantime, all interest, taxes and assessments, public dues and charges of every kind, levied or assessed, or to be levied or assessed on said hereby mortgaged property, which taxes, assessments, interest, public dues, charges, mortgage debt and interest, [ARC] for itself, its successors, and assigns, does hereby covenant to pay when legally demandable. But if default be made in payment of said charges or the interest on said mortgage debt at the time limited for the payment of the same, or in any agreement covenant or condition of this mortgage, then the entire mortgage debt shall be deemed due and demandable, and it shall be lawful for [Equitable], its successors or assigns, or its or their Attorney or Agent, at any time after such default, to sell the property hereby mortgaged or so much thereof as may be necessary, to satisfy and pay said debt, interest and all costs incurred in making such sale, and to grant and convey the said property to the purchaser or purchasers thereof, his her or their heirs or assigns, and which sale shall be made in the manner following, viz: upon giving twenty days notice of the time, place, manner and terms of sale, in some newspaper printed in Anne Arundel County, and such other notice as by the said mortgage, its successors or assigns may be deemed expedient and in the event of a sale of said property under the powers hereby granted, the proceeds, arising from such sale to apply: . . .

On September 18, 1928, the 1928 Plat was recorded, creating Lots 18, 19, 20, and 21, which are the subject of this appeal. The Strip was first depicted on the 1928 Plat. As shown on the 1928 Plat, Lot 21 had no access to Carrollton Road except over the Strip. Lot 18 had access to Carrollton Road over the Strip and over a similar strip binding the opposite side of Lot 19 running between Lots 16 and 19. As shown on the 1928 Plat, Lots 19 and 20 fronted Carrollton

Road, having direct access to it. The conveyance history of Lots 18, 19, 20, and 21 is set out more specifically below.

### Lot 18

On December 10, 1928, ARC conveyed Lot 18 to F.K. Mohler.[7] The deed provided, in pertinent part, that:

[ARC] does grant and convey unto [Mohler], his heirs and assigns, in fee simple, all that piece or parcel of ground situate, lying and being in the Second Election District of Anne Arundel County, State of Maryland, being part of the same land which [ARC] obtained from The Armstrong Company by deed dated [December 2, 1927], . . . to wit: Lot numbered Eighteen (18) of Section "D" in the development known as "Annapolis Roads", as designated on the plat of said Annapolis Roads made by Olmsted Brothers, which said plat is recorded among the Land Records . . .

Together with the buildings and improvements thereupon erected, made, or being; and all and every, the rights, alleys, ways, privileges, appurtenances and advantages to the same belonging or in anywise appertaining.

\* \* \*

[ARC], its successors or assigns, reserves and retains all riparian rights appurtenant to the land as well as the beds of all roadways, lakes and ponds, and agrees to set aside certain beaches and public parks as indicated on the plat and survey made by Olmsted Brothers for the perpetual use of the residents of Annapolis Roads.

Mohler conveyed Lot 18 back to ARC in early 1929. On February 20, 1931, ARC conveyed Lot 18 back to Mohler.

In 1957, the Powells,[8] the subsequent owners of Lot 18, conveyed a portion of Lot 18 to the owners of Lot 19. In 1961, the Powells conveyed Lot 18 to Thomas F. And Dorothy S. Horton. In 1962, the Hortons conveyed a portion of Lot 18

---

7. In 1929, ARC sold Lot 17 to Mohler.

8. The record does not disclose the first names of all of the previous owners of the lots.

to the owners of Lot 19. In 1992, the Estate of R.N. Brown sold Lot 18, as well as Lot 17, to appellants, Stanley and Barbara Samorajczyk. Lot 18 is now in combination with Lot 17 and is designated as 2525 Carrollton Road, and is owned by appellants, the Samorajczyks.

### Lot 19

On October 8, 1928, ARC conveyed Lot 19 to The Homes Improvement Company by deed. Lot 19 was sold by lot reference, and not by metes and bounds description. The deed contained the following language:

Together with the buildings and improvements thereupon erected, made, or being; and all and every, the rights, alleys, ways, privileges, appurtenances and advantages to the same belonging or in anywise appertaining.

\* \* \*

[ARC], its successors or assigns, reserves and retains all riparian rights, appurtenant to the land as well as the beds of all roadways, lakes and ponds, and agrees to set aside certain beaches and public parks as indicated in the plat and survey made by Olmsted Brothers for the perpetual use of the residents of Annapolis Roads.

In 1928, The Homes Improvement Company conveyed Lot 19 to Mr. and Mrs. Clinton Bradley. In 1941, Mrs. Bradley, then a widow, sold Lots 19, 20, and 21 to the Trouchauds. In 1957, Jean Pierre and Margery Dort Trouchaud conveyed Lot 19 to Harry T. and Grace E. Solomon. In 1957, the Solomons conveyed Lot 19 to Mary Baquol and, on the same day, Baquol conveyed Lot 19 back to the Solomons. In 1977, the Solomons conveyed Lot 19 to John H. Gill, who conveyed it to the Kinneys in 1983. In 2006, the Kinneys conveyed Lot 19 to appellee, the Lindsay Trust. Lot 19 is designated as 2515 Carrollton Road and is owned by appellee, the Lindsay Trust.

### Lots 20 & 21

By deed dated June 23, 1932, ARC conveyed Lots 20 and 21 to Helen Sagrario. The deed provided, in pertinent part, as follows:

[ARC] does hereby grant and convey unto [Sagrario], her heirs and assigns, in fee simple, all those pieces, parcels or tracts of land situate, lying and being in Anne Arundel County, State of Maryland, described as follows:

\* \* \*

Lots Numbered ... twenty (20) and twenty-one (21) in the subdivision known as "Section D, Annapolis Roads", as shown on plat recorded in Liber F. S.R. 2 folio 8, one of the Land Records of said County.

Together with the buildings and improvements thereupon erected, made or being; and all and every the rights, alleys, ways, waters, privileges, appurtenances and advantages to the some belonging or in anywise appertaining.

Lots 20 and 21 were conveyed by lot reference and not by metes and bounds descriptions.[9] This deed included no reservation by ARC of the beds of roadways or any other reservation, restriction, or retention of any kind.

On July 6, 1932, Sagrario conveyed Lots 20 and 21 to Mrs. Bradley using the standard form of contract of sale and deed that previously had been used by ARC, prior to the conveyance to Sagrario. The deed stated: "[ARC], its successors and assigns, reserves and retains all riparian rights appurtenant to the land as well as the beds of all roadways, lakes, and ponds, and[ ]agrees to set aside certain beaches and public parks ... for the perpetual use of th[e] residents of Annapolis Roads." In 1941, Mrs. Bradley sold Lots 19, 20, and 21 to the Trouchauds. In 1953, the Trouchauds conveyed Lots 20 and 21 to Paul and Virginia Anderson by deed, including one-half of the 10–foot wide strip that bordered on Lot 20. The deed to the Andersons provided for a use in common of the Strip. In 1959, the Andersons conveyed Lots 20 and 21 to Edward and Agnes Erdelatz, who sold them to John Talbot and

---

9. According to appellants, this conveyance was the result of Equitable, as mortgagee, initiating proceedings to foreclose on the property owned by ARC. ARC then conveyed all of the unsold lots in the subdivision to Sagrario. The lots conveyed were released from the mortgage lien held by Equitable on that land.

appellant Margaret Talbot in 1976. By deed dated May 25, 1976, the Talbots conveyed the portion of the Strip binding Lots 20 and 21 to the Solomons. Specifically, "ALL of that 10 foot path or road, lying between Lots 19 and 20 . . . including that part of said 10 foot path or road lying contiguous to lots 21 and 18 . . . to the end that said path or road may be closed, vesting title thereto in the [owners of Lot 19.]" Lots 20 and 21 are designated as 2509 Carrollton Road, and are owned by appellant, Margaret Talbot.

### Current Litigation

On June 6, 2007, appellants filed a three-count complaint in the Circuit Court for Anne Arundel County seeking declaratory judgment that title to the Strip vests in ARPOA and not the Lindsay Trust. The three counts were labeled: (1) declaratory judgment/quiet title; (2) intentional misrepresentation-fraud/unjust enrichment; and (3) negligent misrepresentation. On July 31, 2007, appellees filed a Motion to Dismiss, arguing as to count one for declaratory judgment that appellants failed to state a claim upon which relief could be granted because a deed dated August 27, 1956, between Club Estates, Inc. and ARPOA,[10] did not convey the Strip. As to counts two and

---

**10.** The August 27, 1956, deed between Club Estates, Inc. and ARPOA provided, in pertinent part:

> [Club Estates, Inc.] has bargained and sold and by these presents does hereby grant and convey unto [ARPOA], its successors and assigns, all of its right, title, interest and estate in and to the following described roads, streets, paths, community areas, easements and rights of way, subject to the conditions hereinafter set forth, and situate in the subdivision known as "Annapolis Roads" in Anne Arundel County, Maryland . . .
>
> \* \* \*
>
> BEING a portion of the land conveyed by the Equitable Company of Washington to Club Estates, Inc., by Deed dated June 7, 1950, and recorded among the land records of said County in Liber JHH 576, folio 559.
>
> TO HAVE AND TO HOLD the aforesaid property unto the proper use and benefit of [ARPOA], its successors and assigns, for use in common with others as roads, streets, paths, community areas, easements and rights of way, and subject to the covenants and restrictions of record.

three, appellees argued that the counts be dismissed for failure to exhaust administrative remedies. On August 2, 2007, appellants filed a response, and on August 14, 2007, appellees filed a reply to the response.

On September 20, 2007, appellees filed an Answer to the June 6, 2007, complaint. On October 1, 2007, appellees filed a counterclaim seeking declaratory judgment. On October 31, 2007, appellants filed an answer to the counterclaim.

On October 30, 2008, appellees filed a Motion for Partial Summary Judgment asking the circuit court to find that the Lindsay Trust is the fee simple owner of the Strip, or in the alternative, to find that ARPOA is not the owner of the Strip. On November 18, 2008, appellants filed an opposition to the Motion for Partial Summary Judgment. On December 18, 2008, appellees filed a Reply to appellants' Opposition to the Motion for Partial Summary Judgment.

On January 9, 2009, a hearing was held on appellees' Motion for Partial Summary Judgment. On August 10, 2009, the circuit court issued a memorandum opinion and order of declaratory judgment, declaring that ARPOA holds no right, title or interest in or to the Strip (the "First Declaratory Judgment"). In the opinion, the circuit court stated:

> The September 18, 1928 [P]lat described above designated several rights-of-way in the community as "road(s)" (e.g., Carrollton). By contrast, the 10–Foot Strip has no designation of any kind. That demonstrates that if the original developer (and ARPOA's predecessor in interest) had considered the 10–Foot Strip to be a road as ARPOA now argues, the developer could easily have designated it as such. It did not.

* * *

---

AND THE SAID [Club Estates, Inc.] covenants that it will warrant specially the property hereby intended to be conveyed, and will execute such other and further assurances of the same as may be requisite and necessary.

By deed dated October 8, 1928, ARC conveyed LOT 19 to Homes Improvement Company, together with "all ... the rights, alleys, ways ... privileges, and appurtenances and advantages to the same belonging or in anywise appertaining." In that deed, ARC "reserve[d] and retaine[d] ... the beds of all roadways, lakes and ponds...." [ ].

Webster's Dictionary, 1913 Edition (Plaintiff's exhibit # 5) defines "roadway" as a "road; especially, the part traveled by carriages." The word "road," in turn, is defined as any "place where one may ride; an open way or public passage for vehicles, persons, and animals; a track for travel, forming a means of communication between one city, town, or place, and another." It goes on to state the word road "*is generally applied to highways, and as a generic term it includes highways, street, and lane.*" (Emphasis in original).

\* \* \*

Having considered the arguments of the parties, we find as a matter of law that the plain language of the deed is ambiguous with regard to whether ARC intended to convey the 10–Foot Strip to Homes Improvement Company, its successors and assigns, including the Lindsay Trust. Therefore, we will resolve that ambiguity, keeping in mind that it must be construed against ARPOA's predecessor in interest, grantor, ARC....

Plaintiff's argument that the 10–Foot Strip is a road because it is a place where one is capable of riding or going from one place to on the other would turn the front yard of every house in the community into a road owned by AR-POA. Moreover, ARC retained ownership of "*the beds of* all roadways." (Emphasis added). Webster's 1913 Dictionary defined "roadbed" as "material laid in place and ready for travel." That definition strongly suggests that ARC intended to retain only the beds of the improved roadways such as Carrollton Road. While there was every indication that Carrollton Road had been paved and was ready for travel in 1928, [appellants] offered no proof the same was true of the 10–Foot Strip in 1928 or 1929.

Even if one ignores the fact that the September 1928 Plat (prepared one month before ARC conveyed LOT 19 to Homes Improvement Company) did not designate the 10–Foot Strip as a road, if ARC had intended to retain ownership of the 10–Foot Strip, it could have drafted its 1927 and 1928 deeds to do so. For instance, they could have specifically retained the "10 foot path shown on the September 1928 plat located between lot 19 and 20." More generally, the deeds could have reserved all "paths," "alleys," "ways," or "shared driveways" along with "beds of roads, lakes and ponds." We find no clear intention by the grantor, [ARC] to retain the 10–Foot Strip, ARPOA's self-serving interpretation of the deeds does not alter the logical construction of its words. . . .

Not only did ARC fail to clearly state an intention to retain the 10–Foot Strip, the 1928 and 1929 deeds included a strong indication that ARC intended to convey it to its grantees. Those deeds transferred ownership of, "all . . . alleys [and] ways . . . and appurtenances and advantages to this same belonging or in anywise appertaining [to the lot]." The 1913 Edition of Webster's defined a "way" as "[t]hat by, upon, or along, which one passes or processes[.]" That definition more closely describes the 10–Foot Strip in 1928/1929 than any other term used in the deeds or the arguments of [appellants]. In addition, Webster's defined "alley" as a "narrow passage; especially a walk or passage in a garden or park, bordered by rows of trees or bushes; a bordered way."

We find, therefore, that ARC retained no rights, title, or interest in the 10–Foot Strip when it conveyed LOT 19 to Homes Improvement Company or LOT 18 to F.K. Mohler.

That conclusion applies with greater force when ARC conveyed LOTS 20 and 21 to Helen Sagrario in 1932. In that deed ARC once again conveyed "all . . . alleys [and] ways . . . and appurtenances and advantages to this same belonging or in anywise appertaining [to LOTS 20 and 21]." *However,* ARC did not retain the roadbed or, for that matter, anything else in that deed.

Finally, for the reasons discussed above, ARC's 1928, 1929 and 1932 deeds contain no clear manifestation of any intention *to retain ownership of the 10–Foot Strip....*
(Footnote omitted) (some omissions and alterations in original). In the order of declaratory judgment, the circuit court:

**DECLARED,** that [ARPOA] holds no right, title or interest in or to the strip of land binding upon LOTS 18, 19, 20 and 21 of the Annapolis Roads subdivision, measuring 10 feet by 114–116 feet (+/−) and shown on Annapolis Roads Plat A, filed September 18, 1928 among the land records of Anne Arundel County at Cabinet # 1, Rod # 5, Plat # 8, and it is,

**DECLARED,** that except as specifically provided in the preceding paragraph, this Declaratory Judgment does not declare the rights or obligations of any other person or entity.[11]

On September 9, 2009, appellants, the Samorajczyks and Talbot, filed a Combined Motion and Memorandum in Support of Motion for Partial Summary Judgment, asking the circuit court to declare that the owners of Lots 18, 19, 20, and 21 in the Annapolis Roads development own the Strip as tenants in common. On October 6, 2009, appellees filed an amended counterclaim for declaratory relief seeking that the circuit court declare the Lindsay Trust the fee simple owner of the portion of the Strip that lies between Lots 19 and 20, including the triangular point at the end of the Strip that abuts Lots 18 and 21, and to declare that no party to the lawsuit has an easement on or over Lot 19, or on or over either the Strip, to the triangular point at the end of the Strip. On November 18, 2009, appellants filed an answer to the amended counterclaim.

On October 6, 2009, appellees filed a motion for summary judgment as to the amended counterclaim for declaratory relief. On November 18, 2009, appellants filed an opposition to appellees' motion for summary judgment. On January 21,

---

11. On May 6, 2010, appellants filed a motion for reconsideration. On June 30, 2010, the circuit court denied the motion.

2010, appellees filed a reply in support of their motion for summary judgment.

On March 12, 2010, the circuit court held a combined motions hearing on appellants' September 9, 2009, motion for partial summary judgment and appellees' October 6, 2009, motion for summary judgment. On June 29, 2010, the circuit court issued a second declaratory judgment (the "Second Declaratory Judgment") stating:

DECLARED, that [appellee], the [Lindsay Trust], holds all right, title and interest in and to the strip of land binding upon lots 18, 19, 20 and 21 of the Annapolis Roads subdivision, measuring 10 foot by 116.61 foot (+/−) *and the* 5 foot by 35.38 foot extension thereto binding upon Lot 18, 19 and 21, according to a survey and plat made by James D. Hicks & Associates Dated August, 1957 … *subject, however, to* an easement appurtenant to Lot No. 18 … to use the 152' Right of Way for ingress and egress to Carrollton Road.

DECLARED, that except as specifically provided in the preceding paragraph, this Second Declaratory Judgment does not declare the rights or obligations of any other person or entity and all other pending requests for relief are hereby denied[.]

On June 30, 2010, the circuit court issued an opinion explaining the findings which formed the basis of the June 29, 2010, second declaratory judgment. In the opinion, the circuit court stated:

*With regard to The Lindsay Trust's argument that it has exclusive title to the 10 Foot Strip,* the most significant conveyances are: (1) Mr. and Mrs. Trouchauds' 1957 conveyance of Lot 19 to the Solomons; (2) the Solomons' 1962 acquisition of Mr. and Mrs. Hortons' title to the 35.38' by 5' portion of Lot 18; and, (3) the Solomons' 1976 purchase of Mr. and Mrs. Talbots' title to Lot 20 and 21 part of the 1925, 10 Foot Strip binding Lots 20 and 21.

When they purchased Lot 19 in 1957, the Solomons took title to the portion of the strip binding *that lot,* to the 10 Foot Strip's midpoint. *See,* former Art. 21, § 5–[114]. In

1962, the Solomons acquired by express grant from Mr. and Mrs. Horton, title to the 35.38′ by 5′ piece of land, which, until that grant, had been part of Lot 18. In 1976, the Solomons acquired by express grant from Mr. and Mrs. Talbot, title to the remaining portion of the 10 Foot Strip; that is, *the portion binding Lots 20 and 21.*

As a result of the 1957, 1962 and 1976 conveyances, Mr. and Mrs. Solomon became the fee simple owners of the entire strip, including the 1962 Extension. In 2006, they conveyed their right, title and interest in Lot 19, and then the entire strip, to The Lindsay Trust.

In the opinion, as to the Strip being subject to an easement to Lot 18, the circuit court stated:

The fact that The Lindsay Trust holds title to the entire 10 Foot Strip does not invalidate Lot 18 owners' easement. In 1976, when the Talbots conveyed their right, title and interest to the Lot 20 and 21 portions of the Strip, they did not (and could not) extinguish the Lot 18 owners' right to use the Strip to access Carrollton Road. Instead, the Solomons purchased title to the Lot 20 and 21 portions of the 10 Foot Strip from the Talbots *subject to that easement.* The Solomons' several purchases merely reduced the number of servient tenements from four to one.

\* \* \*

[W]e find that [appellees] did not rebut the presumption that the reference to the 1928 Plat included in the 1928 Deed demonstrated ARC's intention to convey Lot 18's original grantee, an easement to use the 10 Foot Strip for access to Carrollton Road. That easement thereby became appurtenant to Lot 18 in 1928 and, as a result, passed to all subsequent owners of the property, including Mr. and Mrs. Samorajczyk.

The circuit court found that the original conveyance of Lot 18 occurred on December 10, 1928, and, based on the land records, the court stated that "the reference in the December 10, 1928 ARC–to–Mohler deed to Lot numbered Eighteen (18) of *Section 'D' in a development known as 'Annapolis Roads',*

as designated on the plat of said Annapolis Roads made by Olmstead Brothers, which said plat is recorded among the Land Records of Anne Arundel County in Plat Book W.N.U. *No. 2 folio 8"* (emphasis added), refers to the 1928 Plat. As indicated above, it clearly depicts the 10 Foot Strip." (Some internal quotation marks omitted). The circuit court rejected appellees' argument that "the first Lot 18 deed did not refer to a plat that established the 10 Foot Strip and, as a result, created no presumption that the parties intended to incorporate the use of the Strip as part of the conveyance." The circuit court stated that "[t]he critical point . . . is whether the first deed conveying the property refers to a plat 'depicting' the easement; not whether the plat referred to was the first plat on which the right of way was drawn." The circuit court found that: "[A] reference to a plat filed after the establishment of a right-of-way may go to the weight of the inference to be drawn from that reference." The circuit court rejected appellees' argument that the deed's reference to the plat cannot be interpreted to convey an easement because the plat contains no legend identifying the Strip as a right of way, finding that the lack of a legend is not conclusive evidence that the parties did not intend to establish an easement.

On June 30, 2010, the circuit court issued an order denying appellants' motion for partial summary judgment and the motion to strike appellees' amended counterclaim. On August 5, 2010, appellants noted an appeal and on August 9, 2010, appellees noted an appeal.

## DISCUSSION

### I.

### (1) First Declaratory Judgment

### A. Contentions

Appellants argue that the circuit court erred in August 2009, by granting summary judgment in favor of appellees, finding that ARPOA owns no interest in the Strip. Appellants contend that the circuit court misapplied Md.Code Ann., Real

Property Art. ("R.P.") § 2–114, and wrongly concluded that the 1928 deed of Lot 19 in which ARC reserved all rights "in the beds of all roadways" was not an express and written reservation to the transferor of "all the right, title, and interest to the" Strip.

Appellants argue that the "essential question, in construing the 1928 deed of Lot 19 is whether ARC's reservation of rights 'in the beds of all roadways' was an 'express' and written reservation to the transferor of 'all the right, title, and interest to the street or highway' in question," *i.e.* the Strip. Appellants contend that the circuit court must have concluded that the Strip was a not a roadway within the meaning of the term as it was used in the 1928 ARC deed of Lot 19. Conversely, appellants argue that the circuit court must have concluded that the Strip was a "street" or "highway" or R.P. § 2–114 would have been inapplicable. Appellants maintain that the plain language and definition of "roadway" demonstrate that the circuit court erred in concluding that the Strip was not a roadway. Appellants contend that "to suggest that the reservation in the 1928 ARC deed of Lot 19 in the 'beds of all roadways' was in any way 'ambiguous,' or that it did not apply to the [Strip], which the circuit court must have found to be a 'street' or 'highway,' stretches these common words beyond recognition." Appellants argue that if the Strip was found to be a street or highway for the purpose of R.P. § 2–114, the reservation in the 1928 ARC deed of Lot 19 in the "beds of all roadways" was an express and written reservation of ARC's rights in all of that street or highway.

Appellants contend that the circuit court erred in finding that "the definition of 'roadbed' strongly suggests that ARC intended to retain only the beds of the *improved* roadways such as Carrollton Road," and in finding that "there was every indication that Carrollton Road had been paved and was ready for travel in 1928, [appellants] offered no proof that the same was true of the ... [S]trip in 1928 or 1929." Appellants argue that appellees produced no evidence prior to the August 2009 Order showing that Carrollton Road was paved in 1928. Appellants contend that the fact that the Strip was or was not

paved was clearly material to the First Declaratory Judgment, and as such, a genuine dispute of material fact exists.

Appellants argue that the facts show a clear intention of ARC to reserve rights in the Strip. Appellants maintain that ARC, in the 1920s intended to create a common scheme and plan for the development of the community and, in the 1920s, owners of land would dedicate portions of their land to common use. Appellants argue that the Strip was dedicated to be used as a roadway by the community, including the four lot owners whose properties bound the Strip.[12]

In contrast, appellees contend that the circuit court correctly determined that ARPOA retains no interest in the Strip. Appellees argue that R.P. § 2–114 "creates a presumption that a conveyance by a grantor who owns property on either side of a street conveys to the center of the street, and the burden to prove otherwise is on the person claiming that the conveyance did not convey to the center of the street[,]" *i.e.* ARPOA. Appellees assert that reservations of rights in land

---

**12.** Appellants list several facts in support of the contention that ARC reserved rights in the Strip: (1) all the plats in evidence reflect that the Strip is not part of Lot 19; (2) appellees admitted that, in 1928, when Lot 19 was first conveyed, Lots 18 and 21 were entirely landlocked, and the only access to the main part of Carrollton Road was through the Strip; therefore, "[i]t is entirely logical that, to ensure the marketability of Lots 18 and 21, and without knowing what might happen in the future, the developers would have dedicated the [Strip] to public use, to guaranty that Lots 18 and 21 would forever have access to the main part of Carrollton Road"; (3) "every deed relating to 'Belmont Farms,' with the exception of the 1932 S[a]grario deed and the 1944 Equitable deed of 'S[a]grario' property, contained an explicit reservation of rights in the 'beds of all roadways' "; (4) it is illogical to conclude that the developers, reserving all rights in the "beds of all roadways," did not include both Carrollton Road and the Strip; (5) there is no basis for distinguishing between the main part of Carrollton Road and the Strip for the purpose of interpreting ARC's reservation of rights or for the purpose of applying R.P. § 2–114; (6) that the original plats do not contain an additional written "legend" to indicate the reservation of any land, including Carrollton Road, is not conclusive evidence establishing that the developer did not intend to dedicate the land; (7) the circuit court erred in "drawing an inference of ARC's intention 'to retain the [ ] Strip' from the use of common language in deeds conveying 'all ... alleys [and] ways ... and appurtenances and advantages to this same belonging or in anywise appertaining [to the lot].' "

under R.P. § 2–114 are strictly construed. Appellees contend, pursuant to R.P. § 2–114(b), that ARC conveyed to the center of the Strip when it first conveyed Lots 19 and 20 because, in 1928, ARC owned the properties on both sides of the Strip. Appellees point out that in 1932, the conveyance of Lots 20 and 21 from ARC to Sagrario expressly conveyed all alleys and ways, and the deed did not contain any reservation of the beds of the roadways.[13] Appellees contend that the lack of an express reservation in the 1932 deed conveying Lots 20 and 21 from ARC to Sagrario rebuts appellants' argument that AR-POA reserved interest in the Strip.

Appellees contend that the reservation of "the beds of all roadways" in the 1928 deed to Lot 19 "is not sufficiently clear and specific to constitute an 'express reservation' of a strip of land designed to provide driveway access to two lots." Appellees discount appellants' argument that there are "overwhelming contemporaneous facts [to] demonstrate that ARC intended to reserve all rights to the Strip when it reserved its right to the beds of all roadways." Appellees assert that these facts are irrelevant because the plain language of the deeds did not contain an express reservation of rights in the Strip.

Appellees maintain that "[i]t is not at all inconsistent to conclude that the Strip is not a 'roadway' for purposes of an 'express reservation' in a deed but that it is a 'street' for purposes of [R.P.] § 2–114." Appellees argue that a "shared access driveway for several lots is not, by definition, a road or roadway—it is a shared driveway." Appellees assert that a street is "construed broadly under State law because the policy behind [R.P.] § 2–114, is to ensure that all land that could potentially be retained by a developer instead be conveyed out to adjoining land owners."

Alternatively, appellees argue that if this Court were to look beyond the plain language of the deeds, there is no evidence

---

13. Contrary to appellants' argument that Sagrario was merely a strawman, and therefore, had no real interest in what was conveyed to her, appellees argue that "a deed to a strawman vests fee simple title in the strawman, and the strawman may then convey that title to another."

that ARC intended to reserve all rights to the Strip. Appellees contend that: (1) Lot 19 is not shown on various plats as including the Strip because title to the Strip was conveyed by operation of law and not by way of deed; (2) it is illogical that ARC would have dedicated the Strip to public use given that the purpose of the Strip was to provide access to Carrollton Road for only two lots; (3) the circuit court correctly concluded that the Strip is not a roadway for purposes of an express reservation under state law; (4) Carrollton Road is a road within the ordinary meaning of that term, and it is designated as such on the 1928 Plat and the Strip is a shared driveway, with no label or designation on the 1928 Plat, thus the Strip and Carrollton Road are different; (5) the Strip is closer in nature to an alley or way than a road.

Appellees argue that there is " 'overwhelming' evidence that ARC did not reserve any rights in the Strip or dedicate it to public use." Appellees contend that: (1) ARC made no attempt to reserve any rights to the Strip in connection with the first conveyance of Lots 20 and 21; (2) the owners of Lot 20 and 21 have acted as the owners of the Strip, and by deeds in 1950, 1953, and 1959, the owners of Lot 20 conveyed one-half of the Strip to their grantees; and (3) the 1950 deed, in which the Trouchauds conveyed to the Andersons one-half of the Strip, reserved a "use in common" over the Strip, indicating that the Strip was intended to be, and was treated as, a common driveway and not as a roadway.

Appellees argue that even if the reservation of title to the "beds of all roadways" somehow served as an express reservation of interest in the Strip, the 1932 deed to Sagrario conveyed ARC's rights in the Strip. Appellees point out that, in 1928, ARC conveyed Lot 19 to The Homes Improvement Company and, therefore, in 1932, when ARC conveyed Lots 20 and 21 to Sagrario, it did not own Lot 19. Appellees contend, pursuant to R.P. § 2–114, that "[i]f the grantor of property does *not* own property on the opposite side of the street, the deed passes to the grantee *all* of the grantor's ownership interest in the street to the grantee." Therefore, appellees maintain that the Talbots, as owners of Lots 20 and 21, held

an interest in their one-half of the Strip, and in 1976, the Talbots conveyed all of their interest in the Strip to the owner of Lot 19.

## B. Standard of Review

In *Catalyst Health Solutions, Inc. v. Magill,* 414 Md. 457, 471–72, 995 A.2d 960 (2010), the Court of Appeals stated:

The standard of review for a declaratory judgment entered as a result of the grant of a motion for summary judgment is whether that declaration was correct as a matter of law. We have held that [w]hile it is permissible for trial courts to resolve matters of law by summary judgment in declaratory judgment actions, the court must, in a separate document and in writing, define the rights and obligations of the parties or the status of the thing in controversy. This requirement is applicable even if the action is not decided in favor of the party seeking the declaratory judgment.[14]

(Citations and internal quotation marks omitted) (alteration in original).

 "That, as a general rule, the construction or interpretation of all written instruments is a question of law for the court is a principle of law that does not admit of doubt." *Olde Severna Park Improvement Ass'n v. Gunby,* 402 Md. 317, 329, 936 A.2d 365 (2007) (citations omitted). "In construing the language of a deed, the basic principles of contract interpretation apply." *Miller v. Kirkpatrick,* 377 Md. 335, 351, 833 A.2d 536 (2003). In *Gunby v. Olde Severna Park Improvement Ass'n,* 174 Md.App. 189, 243–44, 921 A.2d 292, aff'd, 402 Md. 317, 936 A.2d 365 (2007), we explained:

---

**14.** "A summary declaratory judgment [is] proper even though no formal motion for judgment [is] made." *Urbana Civic Ass'n v. Frederick Cnty. Bd. of Cnty. Comm'rs,* 23 Md.App. 49, 54–55, 325 A.2d 755 (1974) (citing *Myers v. Montgomery Ward & Co.,* 253 Md. 282, 252 A.2d 855 (1969)). Thus, to the extent that the declaratory judgment in this case declares the rights of the parties and the status of the thing in controversy without a formal motion for summary judgment being made, we will treat the circuit court's declaratory judgment as a declaratory summary judgment.

We construe a deed without resort to extrinsic evidence, if the deed is not ambiguous. In "interpreting a deed whose language is clear and unambiguous on its face, the plain meaning of the words used shall govern without the assistance of extrinsic evidence." *Drolsum v. Horne*, 114 Md. App. 704, 709, 691 A.2d 742, *cert. denied*, 346 Md. 239, 695 A.2d 1227 (1997). We also consider the language of the deed "in light of the facts and circumstances of the transaction at issue as well as the governing law at the time of conveyance." *Chevy Chase [Land Co. v. U.S.]*, 355 Md. [110] at 123 [733 A.2d 1055 (1999) ].

Thus, the intention of a grantor is to be determined from the four corners of his deed, if possible, and if from an attempt to make such determination an irreconcilable conflict arises because of contradictions within the deed other means must be employed to ascertain the correct interpretation to be placed upon it. Words used in a deed should be construed in pari materia and a construction should be adopted which will give effect to all words. Each word and provision of the instrument should be given that significance which is consistent with, and will effectuate, the intention of the parties.

4 HERBERT T. TIFFANY, THE LAW OF REAL PROPERTY § 981 at 112 (3d ed. 1975, 2007 Cum.Supp.).

Language in a deed is considered ambiguous, however, "if, when read by a reasonably prudent person, it is susceptible of more than one meaning." *Calomiris [v. Woods]*, 353 Md. [425] at 436 [727 A.2d 358]; *see Gregg Neck Yacht Club, Inc. [v. County Com'rs of Kent County ]*, 137 Md.App. [732] at 760, 769 A.2d 982 [ (2001) ]. The determination of ambiguity is a question of law, subject to *de novo* review. *See [Auction & Estate Representatives, Inc. v.] Ashton*, 354 Md. [333] at 341 [731 A.2d 441 (1999) ]; *Calomiris*, 353 Md. at 434 [727 A.2d 358]. And, when the words in a deed " 'are susceptible of more than one construction,' " the deed is " 'construed against the grantor and in favor of the grantee....' " *Morrison v. Brashear*, 38 Md.App. 693, 698, 382

A.2d 353 (1978) (citation omitted); *see Gregg Neck Yacht Club, Inc.*, 137 Md.App. at 760 [769 A.2d 982].

## C. *Roadway v. Alley/Way–Definitions*

Webster's Dictionary, 1913 Edition, defined "roadway" as a "road; especially, the part traveled by carriages." The word "road," in turn, is defined as any "place where one may ride; an open way or public passage for vehicles, persons, and animals; a track for travel, forming a means of communication between one city, town, or place, and another." Webster's states that the word "road" "is generally applied to highways, and as a generic term it includes highways, street, and lane." (Emphasis omitted). The 1913 Edition of Webster's defined a "way" as "[t]hat by, upon, or along, which one passes or processes . . .; passage; road, street track, or path of any kind[.]" The 1913 Edition of Webster's defined an "alley" as a "narrow passage; especially a walk or passage in a garden or park, bordered by rows of trees or bushes; a bordered way."

The current definition of the word "road" is "an open way for vehicles, persons, and animals; *esp:* one lying outside of an urban district: highway." Merriam–Webster's Collegiate Dictionary 1076 (11th ed. 2003). The current definition of the word "way" is "a thoroughfare for travel or transportation from place to place." Merriam–Webster's Collegiate Dictionary 1415 (11th ed. 2003). Black's Law Dictionary defines "way" as "[a] passage or path." Black's Law Dictionary 1623 (8th ed. 2004). The current definition of the word "alley" is "a narrow street; *esp:* a thoroughfare through the middle of a block giving access to the rear of lots or buildings." Merriam–Webster's Collegiate Dictionary 32 (11th ed. 2003).

## D. R.P. § 2–114

Md. Ann.Code, Art. 21 § 5–114 (1957, 1973 Repl.Vol.) provides:

Any deed, will, or other instrument which conveys land in this State, binding on any street or highway, or when any street or highway shall be one or more of the lines thereof, shall be construed to pass to the devisee, donee or grantee therein, all the right, title, and interest of the devisor, donor,

or grantor in the street or highway; provided, however, to the extent the devisor, donor or grantor owns other land on the opposite side of the street or highway, then the deed, will, or other instrument shall be construed to pass the right, title, and interest of the devisor, donor, or grantor only to the center of that portion of the street or highway upon which the two (or more) tracts co-extensively bind. The foregoing provisions shall be inapplicable in either of the above instances if the devisor, donor or grantor shall in express terms in the writing by which the devise, gift or conveyance is made, reserve to himself all the right, title and interest to the said street or highway.

*See Boucher v. Boyer,* 301 Md. 679, 687, 484 A.2d 630 (1984) ("This statute, which applies to private and public streets, extends the common law presumption that title to the center of a binding street passes to the grantee.") (citations omitted). This statute was later recodified at Md.Code (1981 Repl.Vol.), R.P. § 2–114, effective July 1, 1974, which provided as follows:

Unless a contrary intention appears in the deed, will, or other instrument, if any deed, will, or other instrument grants or bequeaths land binding on any street or highway, or if any street or highway is one or more of the lines of the land, the deed, will, or other instrument passes to the legatee, donee, or grantee, all the right, title, and interest of the testator, donor or grantor in the street or highway. Except that to the extent the testator, donor, or grantor owns other land on the opposite side of the street or highway, the deed, will, or other instrument passes the right, title, and interest of the testator, donor, or grantor only to the center of that portion of the street or highway on which the two or more tracts coextensively bind.[15]

*See Boucher,* 301 Md. at 686 n. 1, 484 A.2d 630.

In *Callahan v. Clemens,* 184 Md. 520, 526, 41 A.2d 473 (1945), the Court of Appeals explained that Art. 21, § 5–114, "provides that any conveyance binding upon a highway carries

---

**15.** The current version of R.P. § 2–114, titled "Title to street or highway where land binding on it is granted," provides:

to the grantee title to the center thereof, in the absence of an express provision to the contrary. This applies to a private as well as a public way. The statute merely extends a presumption that was recognized at common law." [16] (Citations omitted). In *Bowie v. W. Md. R.R. Terminal Co.*, 133 Md. 1, 11–12, 104 A. 461 (1918), the Court of Appeals explained:

(a) In general.—Except as otherwise provided, any deed, will, or other instrument that grants land binding on any street or highway, or that includes any street or highway as 1 or more of the lines thereof, shall be construed to pass to the devisee, donee, or grantee all the right, title, and interest of the devisor, donor, or grantor (hereinafter referred to as the transferor) in the street or highway for that portion on which it binds.

(b) Property on opposite sides of street.—If the transferor owns other land on the opposite side of the street or highway, the deed, will, or other instrument shall be construed to pass the right, title, and interest of the transferor only to the center of that portion of the street or highway upon which the 2 or more tracts coextensively bind.

(c) Exception.—The provisions of subsections (a) and (b) of this section do not apply if the transferor in express terms in the writing by which the devise, gift, or grant is made, either reserves to the transferor or grants to the transferee all the right, title, and interest to the street or highway.

**16.** In *Peabody Heights Co. v. Sadtler*, 63 Md. 533, 536–37 (1885), the Court of Appeals described the common law as follows:

"The established inference of law is, that a conveyance of land bounded on a public highway carries with it the fee to the centre of the road, as part and parcel of the grant. The idea of an intention in the grantor to withhold his interest in a road to the middle of it, after parting with all his right and title to the adjoining land is never to be presumed. It would be contrary to universal practice; and it was said, in *Peck v. Smith*, 1 Conn. 103 (1814), that there was no instance where the fee of a highway, as distinct from the adjoining land, was ever retained by the vendor. It would require an express declaration, or something equivalent thereto, to sustain such an inference; and it may be considered as the general rule, that a grant of land bounded on a highway or river carries the fee in the highway or river to the centre of it, provided that the grantor at the time owned to the centre, and there be no words or specific description to show a contrary intent. But it is competent for the owner of a farm or lot, having one or more of its sides on a public highway, to bound it by express terms on the side or edge of the highway, so as to rebut the presumption of law, and thereby reserve to himself his latent fee in the highway. He may convey the adjoining land without the soil under the highway, or the soil under the highway, without the adjoining land. If the soil under the highway passes by a deed of the adjoining land, it passes as parcel of the land, and not as an appurtenant." 3 *Kent Comm.*, 433.

"Reasons for These Rules—The natural presumption where a deed conveys land bordering on a stream or highway is, that the grantor means to convey what he owns, and not to reserve a strip of land of no value to him, but the loss of which to the grantee might be productive of great injury. He has power by apt words to reserve what and as much as he pleases, or so to frame the language of his conveyance as to limit the land conveyed to the line of the stream or highway, without extending further, and in all such cases, courts are bound to give effect to his expressed intention. But in the absence of words showing such an intention, it is not presumed that the grantor intended to retain in himself the fee to the street or stream when he has parted with the adjoining land. Therefore it may be said to be a universal rule, that a deed giving a stream as a boundary will convey title to the center of the stream or to low or high water mark, *depending upon how far the grantor's title extends*. By such a description the grantor will convey all that he owns, unless a contrary intent appears from the language of the deed. The deed is taken most strongly against the grantor in the application of this rule and courts will not favor the presumption that he has retained title to the bed of the stream."

### E. Analysis

#### (1) *Road v. Shared Driveway*

■ Preliminarily, we must determine whether the Strip is a roadway. By deed dated October 8, 1928, ARC conveyed Lot 19 to The Homes Improvement Company, together with "all ... the rights, **alleys, ways,** privileges, appurtenances and advantages to the same belonging or in anywise appertaining." (Emphasis added). In the deed, ARC "reserve[d] and re-taine[d] ... the beds of all **roadways,** lakes and ponds[.]" (Emphasis added).

For the reasons that follow, we conclude that the Strip is not a roadway, but rather it is a shared driveway. A review of the September 18, 1928, Plat clearly indicates that certain

rights of way were specifically designated as roads in the Annapolis Roads Community, demonstrated predominantly by the right-of-way labeled "Carrol[l]ton Road." By contrast, the Strip has no designation as a road of any kind. Rather the 1928 Plat labels the Strip "10'." A view of the 1928 Plat reveals that the Strip does not extend to Lake Ogleton, but rather ends at the top of Lots 18 and 21.

A review of the 1928 Plat indicates that the Strip was shared access between Lots 18, 19, 20, and 21. Looking at the plain language of the deeds, ARC only retained rights and interests in the beds of **roadways,** conveying "all ... alleys [and] ways, privileges, appurtenances and advantages to the same belonging or in anywise appertaining [to the lot]." The 1913 Edition of Webster's Dictionary defined a "way" as "[t]hat by, upon, or along, which one passes or processes[.]" That definition more closely matches the description of the Strip set forth in the 1928 and 1929 deeds. Thus, on October 8, 1928, ARC's conveyance by deed Lot 19 to The Homes Improvement Company, "[t]ogether with the buildings and improvements thereupon erected, made or being; and all and every, the rights, alleys, ways, privileged, appurtenances and advantages to the same belonging or in anywise appertaining[,]" included the Strip.

In our view, the circuit court correctly determined that, if "the [Strip] is a road because it is a place where one is capable of riding or going from one place to on the other[, then that] would turn the front yard of every house in the community into a road owned by ARPOA." In 1913, a roadway was defined by Webster's Dictionary as a "road; especially, the part traveled by carriages." "Road," in turn, was defined in 1913 by Webster's Dictionary as any "place where one may ride; an open way or public passage for vehicles, persons, and animals; a track for travel, forming a means of communication between one city, town, or place, and another." A review of the record reveals that the Strip obviously did not provide a track for travel between cities or towns, but rather allowed the owners of Lots 18, 19, 20, and 21 to access Carrollton Road as a "way." As such, the Strip was a part of the lots binding it,

and when lots were conveyed, the portion of the Strip binding the lots was also conveyed.[17]

### (2) Even if the Strip is a "Road" for the Purposes of R.P. § 2–114, There is No Express Reservation

■■■■■ Having determined that the Strip is a not road, we conclude that ARC's reservation in the "beds of all roadways" failed to expressly reserve any right to the Strip. Pursuant to Art. 21 § 5–114, a deed that conveys land binding on a street or highway "shall be construed to pass" to the grantee all of the grantor's right, title, and interest in the street or highway unless the grantor "**shall in express terms in the writing** by which the devise, gift or conveyance is made, reserve to himself all the right, title and interest to the said street or highway." (Emphasis added). We agree with appellees that "[i]t is not at all inconsistent to conclude that the Strip is not a 'roadway' for purposes of an 'express reservation' in a deed but that it is a 'street' for purposes" of Art. 21 § 5–114 or R.P. § 2–114. The purpose of Art. 21 § 5–114 is for a grantor to convey all interest that the grantor has in the highway binding land, as reserving the strip of land would be of no value to the grantor, but would greatly hinder the grantee. *See Bowie,* 133 Md. at 11, 104 A. 461 ("The natural presumption where a deed conveys land bordering on a stream or highway is, that the grantor means to convey what he owns, and not to reserve a strip of land of no value to him, but the loss of which to the grantee might be productive of great injury.").

Applying the principles discussed above, as to Lots 18 and 19, ARC's reservation in "the beds of all roadways" was not sufficient to constitute an "express reservation" in the Strip. The language of the deeds reserving the "beds of all road-

---

17. As to the triangular portion of the Strip, where the remaining 15 feet of the Strip extends beyond the back lot lines of Lots 19 and 20, connecting it at the ends of Lots 18 and 21, by deed dated August 15, 1962, the Hortons conveyed a portion of Lot 18 to the Solomons. By this deed, the Hortons conveyed their interest in the triangular point of the Strip to Lot 19 because the owners of Lot 18 conveyed the land abutting the triangular point pursuant to R.P. § 2–114.

ways" does not demonstrate a specific and express intent to reserve interest in the Strip. "The test for ambiguity is whether the terms are reasonably susceptible to two or more meanings." *Metropolitan Life Ins. Co. v. Promenade Towers Mut. Housing Corp.*, 84 Md.App. 702, 717, 581 A.2d 846 (1990), *aff'd*, 324 Md. 588, 597 A.2d 1377 (1991) (citation omitted). The deeds conveyed to the grantees the "alleys" and "ways," while reserving the interest in the "beds of all roadways"; because the Strip was not labeled as a road on the 1928 Plat nor specified in the deed as a road, it is unclear whether the deed reserving the grantor's interest in the "beds of all roadways" included an express reservation in the Strip.

■ The burden is on the grantor to demonstrate an express intention to reserve the street after conveying the land bordering the street. As the Court of Appeals stated in *Bowie*, 133 Md. at 11, 104 A. 461:

[The grantor] has power by apt words to reserve what and as much as he pleases, or so to frame the language of his conveyance as to limit the land conveyed to the line of the stream or highway, without extending further, and in all such cases, courts are bound to give effect to his expressed intention. But in the absence of words showing such an intention, it is not presumed that the grantor intended to retain in himself the fee to the street or stream when he has parted with the adjoining land.

Upon *de novo* review, we construe any words in the deed susceptible of more than one construction against the grantor and in favor of the grantee, and we conclude, therefore, that ARC failed to expressly reserve any interest in the Strip. *See Gunby*, 174 Md.App. at 243–44, 921 A.2d 292.

Applying this principle, and construing the language in favor of the grantees, the October 8, 1928, conveyance of Lot 19 to The Homes Improvement Company and the February 20, 1931, conveyance of Lot 18 to Mohler, conveyed with those Lots "to the center of" the Strip.

As to Lots 20 and 21, dispositive is appellants' concession that "every deed relating to 'Belmont Farms,' with the excep-

tion of the 1932 S[a]grario deed [conveying Lots 20 and 21] and the 1944 Equitable deed of 'S[a]grario' property, contained an explicit reservation of rights in the 'beds of all roadways.' " When ARC conveyed Lots 20 and 21 to Sagrario on June 23, 1932, ARC failed to expressly reserve a right to the beds of all roadways. Nothing in the June 1932, deed to Sagrario reserved the right to any road or way or retained the rights in a roadbed, or anything else, for that matter. The June 1932 conveyance of Lots 20 and 21 conveyed, by operation of law, any interest that ARC had in the Strip.

Appellants contend that in the July 6, 1932, transaction, Sagrario put ARC's reservation back in the deed when she transferred Lots 20 and 21 to Mrs. Bradley using the standard form of contract sale and deed previously used by ARC prior to the conveyance to her. This contention is without merit. Once ARC conveyed the lots to Sagrario without the reservation, the original reservation as to the beds of roadways, or any other reservation omitted by ARC, was extinguished.

In the deed from Sagrario to Mrs. Bradley, the following language appears: "[ARC] its successors or assigns, reserves and retains all riparian rights appurtenant to the land as well as the beds of all roadways ... for the perpetual use of th[e] residents of Annapolis Roads." ARC, however, was not the grantor—or even a party to the transaction—and therefore, by its plain language the deed effectively failed to create an easement by express reservation for ARC. Parties may create a deed of easement for the benefit of a third party, *see generally Long Green Valley Ass'n v. Bellevale Farms, Inc.,* —— Md.App. —— (2012), but that was not done in this case. Here, Sagrario and Mrs. Bradley did not create and reserve an easement on behalf of ARC, but rather inserted ARC's name into the deed, as ARC reserving an easement for itself even though it was not the grantor in the conveyance and had no interest in the property.

Based on the conveyances discussed above, we conclude that the circuit court properly determined in its August 10, 2009,

Declaratory Judgment Order that ARPOA holds no right, title or interest in the Strip.

## (2) Equitable's Mortgage on the Annapolis Roads Subdivision

### A. Contentions

Appellants argue that the circuit court erred in granting summary judgment in favor of appellees and "ignor[ing] the effect of Equitable's mortgage on [the Annapolis Roads subdivision], which applied to the [Strip] and which was never released prior to the first conveyances of Lots 19 and 20." Appellants contend that in 1928, at the time of the first conveyance of Lot 19, Equitable owned fee simple title to all of the land in the Annapolis Roads subdivision because "in 1927, at the start of development of 'Belmont Farms,' the Equitable Company of Washington, as Mortgag[ee], lent ARC some $250,000, subject to Equitable's mortgage [and,] [a]s part of the same transaction, ARC conveyed fee simple title to The Equitable Company with a grant of possession to ARC, until default of the loan, upon which event the Equitable Company would possess the property." [18] Appellants maintain that the Strip was not a part of Lots 19 and 20. Appellants contend that the 1932 conveyance of the twelve unsold lots to Sagrar-

---

**18.** In support of this contention, appellants point to an affidavit of John J. Dowling, a real estate surveyor, title abstractor and attorney, which was submitted to the circuit court prior to the 2010 hearing, which provides:

The mortgage covered the entire 341 Acres conveyed to [ARC] by deed FSR 24–264, dated 12–02–1927 and included the area of the 10 foot roadway. This mortgage was foreclosed in Equity # 6683, Equity Proceedings FAM 34–334, and subsequently conveyed by Thomas C. Willis, Assignee unto the Equitable Company of Washington by deed WMB 128–523, dated 05–28–1934. The 10 foot roadway between lots 18, 19, 20 & 21 was not released from the mortgage and the Mortgag[or] did not join into any of the conveyances for lots 18, 19, 20 & 21. In 1932[ARC] conveyed various lots to Helen Sagrario but the Equitable Company of Washington, as mortgag[ee], did not release any of the land adjacent to those lots from the mortgage. Absent any joinder by Equitable, [ARC] had no interest to convey to Sagrario in deed 97–280, dated 06–23–1932. Ms. Sagrario did not acquire any title to the ten foot roadway between lots 19 and 20.

io—whom appellants maintain was a strawman—did not convey any interest in the Strip, as the Strip was not part of any of the lots. Appellants argue that when the lots were conveyed to Sagrario, Equitable executed a Deed of Release, in favor of ARC, that released Equitable's mortgage on those twelve lots, but only those lots. Appellants point out that the release, however, provided that Equitable's lien mortgage would remain as to the remainder of the property therein described, which appellants contend included the Strip.

Appellants maintain that "neither the first conveyance of Lot 19 (the Lindsay property) in 1928, nor the first conveyances of the adjacent Lot 20 in the 1932 S[a]grario transactions, resulted in a release or extinguishment of Equitable's title and mortgage interests in both the main part of Carrollton Road and the [Strip]." Appellants argue that "Equitable specifically retained its rights in all property (other than the lots themselves), whenever a conveyance occurred, and it asserted the same reservation of rights in the 'beds of all roadways' found in all other deeds, in the 1932 conveyance of Lot 20 by its strawman, S[a]grario, to Bradley." Appellants contend that "every reason existed for Equitable, the true owner of all of Carrollton Road [including the Strip], to maintain the common scheme and plan in force throughout the rest of Annapolis Roads, and to preserve its unreleased rights in all land that it owned, including the [Strip]."

Appellants argue that this issue was not cured when the foreclosure proceedings were completed and legal and equitable title merged in Equitable. Appellants contend that R.P. § 2–114 does not operate to defeat a mortgage interest when there is an absence of any release of the interest in land that could have been affected by the statute, and in the face of specific language retaining Equitable's mortgage lien "as to the remainder of the property therein described." Appellants argue that because legal and equitable title merged at the conclusion of foreclosure proceedings, this strengthens Equitable's complete ownership of the Strip, which was conveyed to Club Estates, and thereafter to ARPOA, which remains the owner of the Strip today.

Appellants contend that Deeds of Release must be strictly construed against the benefitting party. Appellants argue that ARC was the first beneficiary of the Deed of Release as to Lot 19 and, as such, the Deed of Release must be construed in Equitable's favor, not ARC's. Appellants point out that applying this logic, "Equitable released its mortgage interest *only* in what was described on the 'foundational' plats as Lot 19, and nothing else." Appellants contend that the other Deed of Release from Equitable to Sagrario released only Equitable's mortgage as to the Lots themselves and nothing more.[19]

In contrast, appellees argue that "Equitable's release of the lien of the mortgage on Lots 19 and 20 released the lien of the mortgage on the Strip because the release is a grant of Equitable's entire interest in each lot and that interest included the Strip." Appellees contend that Equitable's fee simple ownership of the land has no effect on title to the Strip, as "Maryland law has long held that a conveyance of title to a mortgagee in a mortgage or deed of trust gives the mortgagee nothing more than a security interest in the property and the mortgagor is recognized as the true owner despite the conveyance of bare legal title to the mortgagee." Appellees, therefore, maintain that ARC was the true owner of the lots and the Strip and had the power to convey Lots 19 and 20. Appellees point out that appellants concede that the deeds by ARC of fee simple title to Lots 19 and 20 were valid conveyances of those lots, and as such, "[i]f ARC had the conceded power to convey fee simple title to the lots, then ARC necessarily had the power and duty to convey title to the Strip, as required by State law." Appellees contend that "[h]ere, because the Deeds of Release expressly released the individual

---

19. Appellants argue that, "[i]n 1950, Club Estates acquired from Equitable by a deed reciting metes and bounds, *all* of the remaining *unsold* portion of the original tract known as 'Belmont' and later known as 'Annapolis Roads'" with narrow exceptions that did not include the Strip. In 1956, Club Estates conveyed by deed to ARPOA *"all* Club Estates rights, title and interest in and to the entirety of Carrollton Road[.]"* Appellants argue that the circuit court erred in not addressing the 1950 deed in determining Equitable's intentions as grantor when it executed the Deeds of Release in 1928 and thereafter.

lots from the mortgage and those lots *included* an interest in the Strip by virtue of State law, the releases included a release of the Strip." Appellees argue that reference in the Deeds of Release to Equitable's retention of the mortgage lien "as to the remainder of the property" was insufficient to retain a lien on the Strip.

## B. The Relevant Deeds of Release

The Deed of Release executed October 6, 1928, with respect to Lot 19, provided, in pertinent part:

> Now, Therefore, This Deed of Release Witnesseth That in consideration of the premises and the sum of Ten Dollars ($10.00) and other good and valuable considerations, the receipt of which is hereby acknowledged, the above named Releasor [*i.e.* Equitable] does hereby grant, convey and release unto the said Releasee [*i.e.* ARC], its successors and assigns, all that lot or parcel of ground located in the development known as "Annapolis Roads" in the Second Election District of Anne Arundel County, Maryland, which is designated as Lot No. Nineteen (19) of Section "D" on the plat of said "Annapolis Roads" made by the Olmsted Brothers, and duly recorded among the Land Records of Anne Arundel County in Plat Book F.S.R. No. 1, Folio 45; Free, clear and discharged of the lien of the aforesaid mortgage and as fully as though the same had never been executed, the said Releasor retaining, however, the lien of said mortgage as to the remainder of the property therein described.

The Deed of Release executed February 19, 1931, with respect to Lot 18, provided, in pertinent part:

> NOW THEREFORE THIS DEED OF RELEASE WITNESSETH that in consideration of the premises and of the sum of Ten Dollars and other good and valuable considerations the receipt whereof is hereby acknowledged, the above named Releasor [*i.e.* Equitable] does hereby grant, convey and release unto the said Releasee [*i.e.* ARC] its successors and assigns all that lot or parcel of ground located in the development known as "Annapolis Roads" in the Second Election District of Anne Arundel County, Maryland, to wit:

Lot eighteen (18) in Section "D".

FREE, Clear and discharged of the lien of the aforesaid mortgage and as fully as though the same had never been executed, the said Releasor retaining however the lien of said mortgage as to the remainder of the property therein described.

The Deed of Release executed June 30, 1932, with respect to Lots 20 and 21, provided, in pertinent part:

NOW, THEREFORE, THIS DEED OF RELEASE WITNESSETH, that in consideration of the premises and the sum of Ten Dollars and other good and valuable considerations the receipt whereof is hereby acknowledged the above named Releasor [*i.e.* Equitable] does hereby grant, convey and release unto the said Releasee [*i.e.* ARC] its successors and assigns all lot or parcel of ground located in the development known as "Annapolis Roads" in the Second Election District of Anne Arundel County, Maryland, to wit:

LOTS 2a, 3, 3a, 8 and 10 in Section "C"

LOTS 1, 2, 8, 13, 14, 18[,] 20 and 21, in Section "D"

FREE, clear and discharged of the lien of the aforesaid mortgage and as fully as though the same had never been executed the said Releasor retaining however the lien of said mortgage, as to the remainder of the property therein described.

### C. Standard of Review

In *Calomiris v. Woods,* 353 Md. 425, 434, 727 A.2d 358 (1999), the Court of Appeals explained: "The rules of contract interpretation apply to our review of the language of a mortgage." (Citation omitted); *see also, Chapman v. Ford,* 246 Md. 42, 51, 227 A.2d 26 (1967) ("The mortgage is not only a security instrument, it is also a contract between the parties.").

### D. Mortgages

In *Darnestown Valley–WHM Ltd. P'ship v. McDonald's Corp.,* 102 Md.App. 577, 580, 650 A.2d 1365 (1994), *cert. denied,* 338 Md. 201, 657 A.2d 795 (1995), we discussed

[w]hether a landlord has sufficient legal title, possession and authority to institute and maintain a summary ejectment action against a tenant for breach of lease, where the fully performing Deed of Trust, to which the tenant is not a party, requires the mortgagee's approval to terminate a lease and such approval was not obtained at the time suit was filed, but was obtained and filed prior to trial.

In *Darnestown*, the deed of trust contained a provision assigning all of the shopping center leases to the bank, with a covenant by the property owner that it would not terminate any of the leases without the prior written consent of the bank. *Id.* at 581, 650 A.2d 1365. At the time the eviction action was filed, the property owner had not obtained the bank's written consent to terminate the tenant's lease. *Id.* at 582, 650 A.2d 1365. This Court reversed the trial court, holding that:

> In summary, we conclude that the Deed of Trust is, in effect, a mortgage, because it was granted as security for [the property owner's] indebtedness to [the bank]. Because [the bank] intended that [the property owner] would possess and manage the property after [the property owner] executed the Deed of Trust, the property was redemised [20] to [the property owner], thus giving [the property owner] the right to maintain an ejectment action against all parties ..., subject to the limitations in the assignment of the leases.[21]

*Id.* at 593, 650 A.2d 1365.

In *Darnestown*, we stated that "[e]very deed which by any other writing appears to have been intended only as security

---

**20.** "Redemise" is "[a]n act or instance of conveying or transferring back (an estate) already demised." Black's Law Dictionary 1304 (8th ed. 2004). "Demise" is defined as "[t]he conveyance of an estate, usu. for a term of years; a lease." Black's Law Dictionary 464 (8th ed. 2004).

**21.** This Court held that "the lack of consent from [the bank] to terminate the [tenant]'s lease was a defect in [the property owner]'s power to

for payment of an indebtedness or performance of an obligation, though expressed as an absolute grant is considered a mortgage." *Id.* at 584, 650 A.2d 1365. We explained:

The term " 'Deed' includes any ... deed of trust ... pertaining to land or property or any interest therein or appurtenant thereto, including an interest in rents and profits from rents." Thus, if a deed of trust transferring property is shown, under all the facts and circumstances, to have been intended merely as security for a debt, the court will go beyond the form and treat it as a mortgage conveying a security interest in the property.

*Id.* (citations omitted) (omissions in original). "In Maryland, 'where property is conveyed by mortgage to secure the payment of a debt, ... the debt is the principal incident of the transaction, and ... the conveyance is no more than security for its payment, and accessory and appurtenant to it.' " *Id.* at 585, 650 A.2d 1365 (citations omitted) (omissions in original). "Through the right of possession until default under the mortgage, and the equity of redemption, the mortgagor is now regarded as the real and beneficial owner of the mortgaged premises as to all persons except the mortgagee and those claiming under him[.]" *Id.* at 586, 650 A.2d 1365. "Thus, although a mortgage technically conveys legal title to the property to the mortgagee, such title is not absolute, being merely for security for payment. A mortgage provision granting the mortgagor the right to continue to possess the property and to collect rents and profits, while paying the taxes and assessments on it, acts as a redemise of the property to the mortgagor until the mortgagor is in default." *Id.* at 586, 650 A.2d 1365 (citations omitted).

"When the mortgage provides for a redemise of the property, the mortgagor is regarded, both at law and in equity, as the substantial owner of the property[.] In effect, the mortgagor is regarded as the real and beneficial owner of the

---

maintain the action that was curable at any time before the issuance of a writ of ejectment[.]" *Darnestown,* 102 Md.App. at 593–94, 650 A.2d 1365.

redemised premises as to all persons except the mortgagee. If the mortgage contains an affirmative covenant that the mortgagor shall possess and enjoy [the mortgaged property] until default, these ownership rights are divested only if the mortgagor defaults in its performance of the mortgage covenants." *Id.* at 587, 650 A.2d 1365 (citations and internal quotation marks omitted).

## E. Analysis

■■■ We find no merit in appellants' contention that in 1928, at the time of the first conveyance of Lot 19, Equitable owned fee simple title to all the land in the Annapolis Roads subdivision. As explained in *Darnestown:* "In Maryland, 'where property is conveyed by mortgage to secure the payment of a debt, . . . the debt is the principal incident of the transaction, and . . . the conveyance is no more than security for its payment, and accessory and appurtenant to it.' " 102 Md.App. at 585, 650 A.2d 1365 (citations omitted) (omissions in original). A mortgage technically conveys legal title to the property, but the conveyance is simply for security for payment. *Id.* at 586, 650 A.2d 1365.

■■ In 1927, Equitable, as mortgagee, lent ARC $250,000. ARC conveyed fee simple title to Equitable with a grant of possession to ARC, until default of the loan, upon which event Equitable would possess the property. *Darnestown,* 102 Md. App. at 586, 650 A.2d 1365 ("A mortgage provision granting the mortgagor the right to continue to possess the property and to collect rents and profits, while paying the taxes and assessments on it, acts as a redemise of the property to the mortgagor until the mortgagor is in default." (Citation omitted)). In the instant case, the mortgage provided for a redemise of the property to ARC; as such, ARC was regarded as the real and beneficial owner of Belmont when the mortgage was executed. *Darnestown,* 102 Md.App. at 587, 650 A.2d 1365 ("When the mortgage provides for a redemise of the property, the mortgagor is regarded, both at law and in equity, as the substantial owner of the property[.] In effect, the mortgagor is regarded as the real and beneficial owner of

the redemised premises as to all persons except the mortgagee." (Citations and internal quotation marks omitted)).

As discussed above, the Strip was conveyed when ARC, as the real and beneficial owner, conveyed Lot 19 to The Homes Improvement Company, Lot 18 to Mohler, and Lots 20 and 21 to Sagrario in 1928, 1928 and 1931, and 1932, respectively. When the lots were conveyed, the Strip was part of the conveyances, and Equitable specifically released its mortgage as indicated in the Deeds of Release set forth above. Appellant's contention that: "Equitable released its mortgage interest *only* in what was described on the 'foundational' plats as Lot 19, and nothing else" is unpersuasive because the Deeds of Release expressly released the lots from the mortgage and those lots included an interest in the Strip. Accordingly, the releases included a release of the Strip. To conclude otherwise is illogical.

We conclude that the circuit court properly entered the First Declaratory Judgment finding that ARPOA holds no right, title, or interest in and to the Strip. When ARC conveyed Lot 19 to The Homes Improvement Company in 1928, Lot 18 to Mohler in 1928 and 1931, and Lots 20 and 21 to Sagrario in 1932, ARC conveyed its interest in the Strip. Assuming *arguendo* that Equitable had any interest in the Strip, when Equitable executed its Deeds of Release as to these Lots, Equitable released its interest in the Strip.

### (3) Second Declaratory Judgment

Appellants argue that the circuit court erred in granting summary judgment in favor of appellees, and entering the Second Declaratory Judgment determining that the Lindsay Trust holds all right, title, and interest in and to the Strip.[22] Appellant reiterates that ARPOA and its predecessors contin-

---

22. Appellants disagree with the circuit court that, "in addition to purchasing title to their individual lots, ARC's grantees also took title to the portion of the strip binding their lot(s) to the strip's midpoint." Appellants maintain that this fact is clearly disputed.

ually owned the entirety of the Strip and that, as a result, neither the Trouchauds, Hortons, Talbots nor Solomons owned any interest that could be conveyed.[23] Appellants contend that the circuit court erred in finding that the Lindsay Trust holds all right, title and interest in and to the Strip. For the reasons set forth below, we disagree.

The circuit court properly issued the Second Declaratory Judgment holding that the Lindsay Trust holds all right, title, and interest in and to the Strip. The following conveyances support this conclusion. In 1957, the Trouchauds conveyed Lot 19 to the Solomons—after this conveyance the Solomons owned the portion of the Strip binding Lot 19. In 1962, the Hortons conveyed title to one-half of the Strip owned by Lot 18 to the Solomons. The August 15, 1962, deed reserved to the Hortons and their successors a right to use the one-half of the Strip owned by Lot 18 to access Carrollton Road. At that point, the Solomons owned the portion of the Strip binding Lots 18 and 19. On May 25, 1976, the Talbots conveyed, by express grant, title to the remaining portion of the Strip, *i.e.* the portion of the Strip binding Lots 20 and 21, to the Solomons. The May 25, 1976, deed provided that: "ALL of that 10 foot path or road lying between Lots 19 and 20 ... including that part of said 10 foot path or road lying contiguous to lots 21 and 18, ... to the end that said path or road may be closed, vesting title thereto in the [owners of Lot 19]." Following these three conveyances, the Solomons became the fee simple owners of the Strip, including the 1962 "triangular" extension. In 2006, the Solomons conveyed Lot 19 and their interest in the entire Strip to the Lindsay Trust. As such, the Lindsay Trust holds all right, title, and interest in and to the Strip.

---

**23.** Specifically, appellants argue that the May 25, 1976, conveyance of any interest the Talbots may have had in the Strip to the Solomons meant nothing, as the Talbots never believed they owned any interest in the Strip. Appellants contend that, if nothing else, this shows a clear dispute of material fact.

**Cross–Appeal**

**I.**

Appellees filed a cross-appeal arguing that the circuit court erred in finding that the Strip is subject to an easement appurtenant to Lot 18. For the reasons set forth below, we disagree.

## (1) Easements Generally

 This Court has recently explained the "basic legal principles governing easements" in *Sharp v. Downey,* 197 Md.App. 123, 13 A.3d 1 (2010), *cert. granted,* 419 Md. 646, 20 A.3d 115 (2011). "An easement is broadly defined as a nonpossessory interest in the real property of another. . . . An easement involves the privilege of doing a certain class of act on, or to the detriment of, another's land, or a right against another that he refrain from doing a certain class of act on or in connection with his own land[.]" *Id.* at 159–60, 13 A.3d 1 (citations and internal quotation marks omitted).

 Private easements are easements not enjoyed by the public, and every private easement consists of "two distinct tenements—one dominant and the other servient." *Id.* (citation and internal quotation marks omitted). In *Sharp,* we stated that:

An easement can be described as a right of the owner of the dominant estate—often, a right of way—over the real property that comprises the servient estate. In other words: "A dominant tenant is the owner of '[a]n estate that benefits from an easement'; a servient tenant is the owner of '[a]n estate burdened by an easement.' "

. . . [T]here are several ways to create an easement. "An easement may be created by express grant, by reservation in a conveyance of land, or by implication." An express easement, whether by grant or reservation, must be created by a written memorandum that satisfies the Statute of Frauds; and "a right[ ] of way created by deed" must satisfy " 'the mode and manner prescribed by the recording statutes.' " . . . In contrast, an easement by implication

" 'may be created in a variety of ways, such as by prescription, necessity, the filing of plats, estoppel and implied grant or reservation where a quasi-easement has existed while the two tracts are one.' "

*Id.* at 160–61, 13 A.3d 1 (citations omitted) (some alterations in original).

■ One cannot have an easement to his own property, "as the same object is obtained by him through the exercise of the general right of property." *Kelly v. Nagle,* 150 Md. 125, 130, 132 A. 587 (1926) (citing *McTavish v. Carroll,* 7 Md. 352, 358 (1855)). In *Kelly,* 150 Md. at 131, 132 A. 587, the Court of Appeals stated: "It is true that when the same person becomes the owner of the dominant and servient estates, and there is no intervening or outstanding interest or title held by some one else in or to the appurtenant easement,[24] the unity of the two estates in the one individual necessarily extinguishes and merges the easement appurtenant to the dominant estate, because no person can have an easement in the land which he himself owns." (Citations and internal quotation marks omitted).

### (2) Express Easement

Appellees contend that "[t]here is no deed or other document from the owner of the Strip that grants an express easement over the Strip to the owners of Lot 18." Appellees argue that the 1962 deed from the Hortons to the Solomons does not constitute an express easement. Appellees assert that, in order to create an express easement, the instrument must contain " 'the names of the grantor and grantee, a description of the property sufficient to identify with reasonable certainty, and the interest or estate intended to be granted.' " Appellees point out that the deed was not signed

---

**24.** In *Boucher,* 301 Md. at 691, 484 A.2d 630, the Court of Appeals stated: "A conveyance which conveys property by reference to a map or plat, which map or plat shows the property so conveyed is bounded by a road or way, the right-of-way thereover passes by the conveyance as an easement appurtenant thereto." (Citations and internal quotation marks omitted).

by the Solomons, it did not list the Solomons as the grantors, it did not describe the property that is the subject of any grant, and it failed to identify any interest sought to be conveyed.

 An express easement by grant or reservation may be created only "in the mode and manner prescribed by the recording statutes." Although no words of inheritance are necessary, the instrument must contain "the names of the grantor and grantee, a description of the property sufficient to identify it with reasonable certainty, and the interest or estate intended to be granted." . . . we limited that requirement to rights of way created by deed and held that a right of way, otherwise sufficiently described, could be validly created by a memorandum that complied with the Statute of Frauds, *i.e.*, a writing signed by the party to be charged or that party's authorized agent. *Kobrine v. Metzger*, 380 Md. 620, 636, 846 A.2d 403 (2004) (citations omitted).

 When interpreting an instrument creating an express easement, the Court of Appeals has outlined the following procedure:

"In construing the language of a deed, the basic principles of contract interpretation apply. The grant of an easement by deed is strictly construed. . . . The extent of an easement created by an express grant depends upon a proper construction of the conveyance by which the easement was created. . . . "The primary rule for the construction of contracts generally—and the rule is applicable to the construction of an easement—is that a court should ascertain and give effect to the intention of the parties at the time the contract was made, if that be possible." . . ."

. . .

"A court construing an agreement under this test must first determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated. In addition, when the language of the contract is plain and

unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed. In these circumstances, the true test of what is meant is not what the parties to the contract intend it to mean, but what a reasonable person in the position of the parties would have thought it meant. Consequently, the clear and unambiguous language of an agreement will not give [way] to what the parties thought the agreement meant or intended it to mean."

*White v. Pines Cmty. Improvement Ass'n,* 403 Md. 13, 31–32, 939 A.2d 165 (2008) (omissions and alterations in original) (citing *Garfink v. Cloisters at Charles, Inc.,* 392 Md. 374, 392–93, 897 A.2d 206 (2006)). "The primary consideration in construing the scope of an express easement is the language of the grant." *Md. Agric. Land Pres. Found. v. Claggett,* 412 Md. 45, 63, 985 A.2d 565 (2009) (citation, alteration, and internal quotation marks omitted).

Returning to the case at hand, first examining the language of the August 15, 1962, deed in which the Hortons conveyed a portion of Lot 18 to the Solomons, we determine the deed includes an express easement. The deed provided, in pertinent part:

**Beginning** for the same at an iron pipe previously found; said iron pipe being on the westernmost side of a **10 ft. right-of-way** leading from Lots 18 and 21 to Carrol[l]ton Road all as shown on a plat entitled Annapolis Roads, Plat A, Section D recorded among the Plat Records of Anne Arundel County in Plat Book 6, page 31; said iron pipe being also at the end of the 12th line of the first described parcel in that conveyance from Eliot P.Y. Powell and Shirley T. Powell, his wife to Thomas F. Horton and Dorothy S. Horton, his wife by deed dated February 8, 1961 and recorded among the Land Records of Anne Arundel County in Liber G.T.C. 1455, folio 232. Thence from the point of beginning so fixed and binding on the 13th line of the first described parcel in the above mentioned conveyance to Horton and also binding on the southwesternmost one-half of the above mentioned **10 ft. right-of-way,** South 9 degrees

56 minutes 00 seconds West 12.25 ft.; thence leaving said right-of-way and binding on the part of the division line between Lots 18 and 21 as shown on the aforementioned plat of Annapolis Roads and also binding on a part of the 14th line of the first described parcel in the above mentioned conveyance to Horton, with meridian corrected, South 33 degrees 45 minutes 00 seconds West 25.27 ft.; thence leaving said 14th line and running for a new line of division, North 43 degrees 45 minutes 00 seconds West 5.07 ft. to a point which marks the beginning of the 2nd line in that conveyance from Eliot P.Y. Powell and Shirley T. Powell, his wife to Harry T. Solomon and Grace E. Solomon, his wife by deed dated October 30, 1957 and recorded among the Land Records of Anne Arundel County in Liber G.T.C. 1169, folio 417; thence leaving said point and binding on the 1st line of the above mentioned conveyance to Solomon, reversely, North 33 degrees 45 minutes 00 seconds East 35.38 ft. to the point of beginning.

Containing 150.2 square feet of land, more or less, according to a survey and plat made by James D. Hicks & Associates dated August, 1957, revised March, 1962.

**Reserving, however, a right of ingress and egress to Carrol[l]ton Road over the above described property for the benefit of the grantors herein, their heirs and assigns forever.**

Being a part of Lot No. 18 all as shown on a plat entitled Annapolis Roads, Plat A, Section D, recorded among the Plat Records of Anne Arundel County in Plat Book 6, page 31, being also a part of that conveyance from Eliot P.Y. Powell and Shirley T. Powell, his wife to Thomas F. Horton and Dorothy S. Horton, his wife by deed dated February 8, 1961 and recorded among the Land Records of Anne Arundel County in Liber G.T.C. 1455, folio 232.

(Emphasis added).

As the Court of Appeals has stated, an express easement can be created only through a written instrument containing "the names of the grantor and grantee, a description of the

property sufficient to identify it with reasonable certainty, and the interest or estate intended to be granted." *Kobrine,* 380 Md. at 636, 846 A.2d 403 (citation and internal quotation marks omitted). Pursuant to the deed dated August 15, 1962, the Hortons conveyed fee simple title to the 35.38' by 5' strip of land to the Solomons, who incorporated it into Lot 19. In doing so, however, the Hortons unambiguously reserved the right to use that strip of land for ingress and egress to Carrollton Road stating: "Reserving, however, a right of ingress and egress to Carrol[l]ton Road over the above described property for the benefit of the grantors herein, their heirs and assigns forever." This deed thereby created the 1962 Extension by express reservation. The terms of that reservation are specific, and the location of the easement reserved is described by metes and bounds—"10 ft. right-of-way."

Determining that the Hortons enjoyed the right in 1962 to use the triangular portion of the Strip to access Carrollton Road, does not answer the question as to whether the Hortons, or any subsequent owners of Lot 18, have an easement over the entire Strip to access Carrollton Road. To answer this question, we must ascertain whether an easement across the Strip was present, in any form, in earlier conveyances of Lot 18.

### (3) Implied Easement By Virtue of Plat Reference

Appellees contend that "the first conveyance of Lot 18 by reference to the 1928 Plat did not create an easement by implication because the plat itself does not contain any words that demonstrate the existence of an easement." Appellees argue that no easement by implication exists as there are two conditions precedent to obtaining an easement by implication—(1) the deed to the property in question must expressly reference the plat; and (2) the plat itself must create easement rights—the second of which was not met in this case.

Appellees argue that "any easement on the Strip created by the first conveyance of Lot 18 by reference to the plat is limited to an easement over the 1/2 of the Strip that borders

on Lots 18 and 19." Appellees contend that ARC owned the one-half of the Strip that bordered Lots 20 and 21 when it conveyed Lot 18 to Mohler and when Mohler conveyed Lot 18 back to ARC, and, therefore, any easement merged into ARC's fee simple ownership of that one-half of the Strip. Relying on *Kelly,* 150 Md. 125, 132 A. 587, appellees assert that "a person cannot hold an easement in land that he himself owns because the easement is extinguished when the owner-ship of the dominant and servient estates is united in one person." Appellees maintain that ARC's second conveyance of Lot 18 to Mohler in 1931 did not create or convey an implied easement on the one-half of the Strip owned by ARC because the second conveyance did not include an express reference to the 1928 Plat.

Appellants respond that "[a]ppellees' argument that the first deed to Lot 18 did not and could not have created an easement" is contingent upon the contention "that when ARC conveyed Lot 19 to the Homes Improvement Co[mpany] in October of 1928 it also conveyed one-half of the [Strip] that bordered on Lot 19, by operation of law." Appellants contend that the 1931 Mohler deed "conveyed ARC's interests in '[a]ll that piece of land situate, lying and being in the development known as 'Annapolis Roads' in the Second Election District of Anne Arundel County, State of Maryland, being part of the land which [ARC] obtained from The Armstrong Company by deed dated the 2d day of December 1927 and recorded among the Land Record of Anne Arundel County in Liber F.S.R. No. 2, folio 264, to wit: Lot eighteen (18) in Section 'D'." Appel-lees argue that "[a] competent land record examiner would have clearly understood, by the language in both the Mohler deed . . . what was being reserved *and* what was subjected to an easement."

In their Reply Brief, appellees argue that the plain lan-guage of the first and second deeds to Mohler demonstrate that no reference to the plat was made in the second deed. The first Mohler deed included the following: "to wit: [Lot 18] of Section 'D' in the development known as 'Annapolis Roads,' as designated on the plat of said Annapolis Roads

made by Olmsted Brothers, which said plat is recorded among the Land Records of Anne Arundel County in Plat Book W.N.U. No. 2 folio 8." The second deed to Mohler contained only the following "to wit: [Lot 18] in Section 'D'," and no reference to the plat whatsoever. As such, appellees argue that the reference to Section D in the second deed is insufficient to be considered a reference to the plat.

 "An implied easement is based on the presumed intention of the parties at the time of the grant or reservation as disclosed from the surrounding circumstances rather than on the language of the deed." *Boucher*, 301 Md. at 688, 484 A.2d 630 (citation omitted). "[G]rants of easements by implication are looked upon with jealousy and are construed with strictness by the courts." *Condry v. Laurie*, 184 Md. 317, 321, 41 A.2d 66 (1945) (citation omitted). "[A] deed that is silent as to the right of way but refers to a plat that establishes such a right of way creates a rebuttable presumption that the parties intended to incorporate the right of way in the transaction." *Boucher*, 301 Md. at 689, 484 A.2d 630 (citation omitted). "A party may therefore point to the existence of the plat to establish that the parties intended that the right of way depicted in the plat be used by the grantee." *Id.*

In *Boucher*, 301 Md. at 694, 484 A.2d 630, the Court of Appeals held "that the Bouchers ha[d] an implied easement over George Street by virtue of the reference in their deed to the Piper Estates plat, which depicts George Street as a right of way to their property." The Pipers recorded a subdivision plat—the Piper Estates plat—which indicated that they were offering to dedicate George Street, which bounded two lots, to public use. *Id.* at 683–84, 484 A.2d 630. The Pipers conveyed the two lots bounded by George Street in deeds that referenced the Piper Estates plat, and then conveyed the remainder of their interest to the Bouchers. *Id.* at 684, 484 A.2d 630. Frederick County did not accept George Street as a public road, but the Bouchers used George Street to access their property. *Id.* at 685, 484 A.2d 630. In reviewing whether or not the Bouchers had an implied easement by virtue of plat reference, the Court stated that:

As we see it, a deed that is silent as to the right of way but refers to a plat that establishes such a right of way creates a rebuttable presumption that the parties intended to incorporate the right of way in the transaction. *See generally Mullan v. Hochman, supra* [157 Md. 213, 145 A. 554 (1929) ] (when a grantor subdivides property shown on a plat as bordering streets he impliedly convenants that the grantee will have an easement over the street shown on the plat). A party may therefore point to the existence of the plat to establish that the parties intended that the right of way depicted in the plat be used by the grantee. In sum, we view this as a reasonable application of the common law rule that a deed reference to a plat incorporates that plat as part of the deed. *See Klein v. Dove, supra; Williams Realty Co. v. Robey,* 175 Md. 532, 2 A.2d 683 (1938); *see also Schickli v. Keeling,* 307 Ky. 210, 210 S.W.2d 780 (1948); *Goldstein v. Beal,* 317 Mass. 750, 59 N.E.2d 712 (1945); *Vogel v. Haas,* 456 Pa. 585, 322 A.2d 107 (1974).

*Boucher,* 301 Md. at 689, 484 A.2d 630. Because the Bouchers' deed referenced the Piper Estates plat "as a means of describing the boundaries of their property[,]" the Bouchers had an easement over George Street. *Id.* at 691, 484 A.2d 630. The Court noted that "all grantees from the common grantor (the Pipers) purchased their property with reference to the same plat, and all of the lots either bind or abut George Street. In our view, this indicates that the grantors intended that each grantee have at least an easement over the street." *Id.*

In this case, we agree with the circuit court that the first conveyance of Lot 18 established an easement to use the Strip to access Carrollton Road, as "a deed that is silent as to the right of way **but refers to a plat that establishes such a right of way creates a rebuttable presumption that the parties intended to incorporate the right of way in the transaction."** *Boucher,* 301 Md. at 689, 484 A.2d 630 (citation omitted) (emphasis added).

Appellees maintain that the first conveyance of Lot 18 deed did not refer to the plat that established the Strip and, as

such, the deed did not create a presumption that the parties intended to incorporate the use of the Strip as part of the conveyance. We disagree. As the circuit court correctly noted:

> [T]he original, and thus relevant, conveyance of Lot 18 occurred on December 10, 1928. The February 1931 conveyance was the *third* conveyance of Lot 18. To the extent not conceded by [appellees] or contained in the court file, pursuant to Rule 5–201, we take judicial notice of the Anne Arundel County Land Records.... Those records demonstrate the following:
>
> > (1) The 1928 Plat ... was originally recorded with the following description: *"Annapolis Roads,* Plat A, *Section D (FSR 2, folio 8),* Cabinet Number 1, Rod Number S".* (Emphasis added).
> >
> > (2) The 1928 Plat was refiled on 9/18/28 with the following description: "Annapolis Roads Plat A, Section D (FSR 2, folio 8), *Original Recording 8, Cabinet Number 1, Rod Number S".* (Emphasis added).

Appellees argued that the reference to Section D is insufficient to be considered a reference to the Plat. Again, we disagree. As stated earlier, the December 10, 1928, deed from ARC to Mohler stated: "Lot numbered Eighteen (18) of Section 'D' in a development known as 'Annapolis Road', as designated on the plat of said Annapolis Roads made by Olmsted Brothers, which said plat is recorded among the Land Records of Anne Arundel County in Plat Book W.N.U. No. 2 folio 8," refers to the 1928 Plat. The 1928 Plat clearly depicted the Strip, and as such, the presumption was created that the parties intended to incorporate the use of the Strip as part of the conveyance.

Appellees argue that because the 1928 Plat did not establish [25] the Strip, the reference to the plat in the original Lot 18

---

**25.** As noted by the circuit court, appellees "claim that an earlier (apparently unrecorded) version of the 1928 Plat, identical in every relevant way to the 1928 Plat, established the [Strip]."

deed could not, as a matter of law, create an implied easement by plat reference. We find no merit to this contention. The Court of Appeals held in *Boucher*, "that the Bouchers have an implied easement over George Street by virtue of the reference in their deed to the Piper Estates plat, which **depicts** George Street as a right of way to their property." 301 Md. at 694, 484 A.2d 630. From this holding, we conclude that an implied easement by virtue of plat reference may exist where the plat **depicts** a right of way. *See Boucher*, 301 Md. at 692, 484 A.2d 630 (In another case, the Court of Appeals held that, although the property owners lacked a clause with an express right of use in an alley in their deed as other lot owners had, the Court "determined that the[property owners] nonetheless had an easement because the development plat depicted the alley." (Citing *Atlantic Constr. Corp. v. Shadburn*, 216 Md. 44, 51–52, 139 A.2d 339 (1958))).

The reference to the 1928 Plat in the deed from ARC to Mohler conveying Lot 18 creates a strong presumption that the conveyance included an easement to use the Strip for ingress and egress to and from Carrollton Road. The 1928 Plat depicts the Strip, and the Strip's location between Lots 18, 19, 20 and 21. Appellees concede that the original purpose of the Strip apparently was to provide access to Carrollton Road to the owners of Lots 18 and 21, as a review of the 1928 Plat reveals—the Strip, as drawn on the 1928 Plat, runs from a 10 foot wide opening at Carrollton Road, between the length of Lots 19 and 20, and ends at openings at Lots 18 and 21, as soon as it reaches those two lots. The 1928 Plat clearly depicts the Strip as a right of way.

■■■ Appellees contend that the second conveyance of Lot 18 to Mohler did not refer to the 1928 Plat and, therefore, any easement to use the Strip was extinguished at that time. A review of the second conveyance from ARC to Mohler in the 1931 deed confirms that the deed does not explicitly state a reference to a "plat" in the property description. Rather, the deed conveys the following parcel:

[A]ll that piece or parcel of ground situate, lying and being **in the development known as "Annapolis Roads"** in the Second Election District of Anne Arundel County, State of Maryland, being part of the same land which the said party of the first part obtained from The Armstrong Company by deed dated the 2nd day of December 1927 and recorded among the Land Records of Anne Arundel County in Liber F.S.R. No. 24, folio 264, to wit:

**Lot eighteen (18) in Section "D"[.]**

(Emphasis added). Despite lack of use of the term "plat" or the liber and folio for the 1928 Plat, the description above is a sufficient reference to, and incorporation of, the 1928 Plat to include notice of the easement. Significantly, the description of the property refers to: (1) the Annapolis Roads development, (2) Lot 18, and (3) Section D. Notably, none of the three pieces of information used to describe the property conveyed existed before the creation and recordation of the 1928 Plat. Prior to the creation of the 1928 Plat, the development was known as and referred to as "Belmont," including in the December 2, 1927, deed referenced in the second conveyance to Mohler ("Liber F.S.R. No. 24, folio 264"). Only with the filing of the 1928 Plat did the name of the development change from "Belmont" to "Annapolis Roads." Additionally, until the recordation of the 1928 Plat and the creation of the Annapolis Roads development, specific lots and sections of land did not exist. The 1928 Plat created Section D and Lot 18 within Section D. Thus, although the 1928 Plat is not specifically mentioned by name in the second conveyance to Mohler, the conveyance refers to the 1928 Plat in three other specific ways—by naming the development, the lot, and the section. Those three specific pieces of information, combined with the chain of title [26] containing the specific reference to the

---

**26.** In *Bright v. Lake Linganore Ass'n, Inc.*, 104 Md.App. 394, 424–25, 656 A.2d 377 (1995), we summarized chain of title notice as follows:

An owner's "chain of title" is simply the preceding recorded deeds (or other instruments of transfer, such as a will) going back in time, in order, i.e., the last recorded to first recorded instrument. In Maryland, these deeds or instruments are generally found in the

1928 Plat, were sufficient to constitute a specific plat reference for purposes of conveyance and an easement to use the Strip.

On December 10, 1928, when ARC first conveyed Lot 18 it did so by describing Lot 18 by specific reference to the 1928 Plat. On February 20, 1931, when ARC conveyed Lot 18 a second time to Mohler, it did so by describing Lot 18 by specific reference to the 1928 Plat, although the term "plat" was not used within that description. We, therefore, conclude that the first and second conveyances of Lot 18 established an implied easement by virtue of plat reference to use the Strip to access Carrollton Road.

### (4) Lack of Legend

Appellees argue that "the 1928 Plat is silent as to the creation of an easement on the Strip.[27] There is no legend

---

public land records, testamentary records, Orphans' Court records, and judgment and lien records of the particular county wherein the land is located. A subsequent owner, therefore, has notice of what is contained in his or her actual chain of title even if he or she has never seen it, heard it, or even imagined that it existed.
(Emphasis omitted).

27. At oral argument, appellants contended that the circumstances in this case differ from those in *Boucher* because, in this case, the plat is silent as to an easement. As discussed above, in *Boucher*, the Court of Appeals stated that "[t]he plat depicted George Street as a fifty foot wide right of way[.]" 301 Md. at 684, 484 A.2d 630. In *Boucher*, in reaching its holding, the Court of Appeals utilized precedent establishing that a plat's depiction of a right of way creates a presumptive easement. *Id.* at 692, 484 A.2d 630. Specifically, the Court of Appeals applied *Shadburn*, 216 Md. 44, 139 A.2d 339, and *Hackerman v. City of Balt.*, 212 Md. 618, 130 A.2d 732 (1957), discussing the cases as follows:

Factually, the Shadburns owned a lot on a Baltimore City block, and appellants owned several lots on the same block. An alley separated the lots on the west side of the block from the lots on the opposite side (east side) of the block. After the appellants obstructed this alley, the Shadburns and others brought suit to enjoin the obstruction. This Court upheld the requested relief, holding that the Shadburns and the other neighbors had a right to use the alley. Because some of the lot owners had express rights of use in their respective deeds, the *Shadburn* Court held that they had express easements. Although the Shadburns lacked this clause in their deed, we determined that they nonetheless had an easement because the develop-

that could form the 'source' of an easement on the Strip, [and as such,] even a conveyance that refers to the Plat does not include an easement by implication as part of the conveyance because the Plat does not itself establish an easement." Appellants argue that no legend on the foundational plats was necessary to create an easement over the Strip.

In *Klein v. Dove*, 205 Md. 285, 287–88, 107 A.2d 82 (1954), a controversy arose between owners in a waterfront development over a ten-foot road or right of way shown on a plat along one side of the defendants' lot connecting to an interior road to a beach area.[28] The right of way was obstructed by the defendants and had been obstructed by them or by previous owners for some years before the institution of the suit. *Id.* at 288, 107 A.2d 82. The plaintiffs sought to have right of access to the water by way of the lake area. *Id.* The Court of Appeals noted the lack of a legend depicting the right of way to a "community area," stating:

---

ment plat depicted the alley. *Id.* [216 Md.] at 51–52, 139 A.2d 339; *see Hackerman v. City of Baltimore*, 212 Md. 618, 130 A.2d 732 (1957) (easement by implication may be created when plat depicts a right of way) (dictum). In both *Shadburn* and *Hackerman*, we found that a plat that sets out a street or alleyway creates a presumption that a dedication was intended.... These cases, together with our discussion of this theory in the context of the instant case, convince us that the Bouchers have an implied easement over George Street.

*Boucher*, 301 Md. at 692, 484 A.2d 630 (alteration in original); *see also Shadburn*, 216 Md. 44, 139 A.2d 339.

**28.** The plat bore the following legend:

The Streets and Roads laid out on this Plat of 'Wild Rose Shores' are not dedicated to the Public or to the Public Use, but the ownership and control thereof are specifically reserved by the owner, Gertrude L. Reed, her heirs and assigns, for the exclusive and mutual use and benefit of the owners of the lots abutting on said Streets and Roads. Subject, however, to the further condition that the Roadway from Line 'A' running in a southwest and southerly direction to the shore of South River, together with the Pier or Dock (all as shown on said Plat) are not dedicated to the Public or to the Public use, or to any lot owner or owners, but are reserved exclusively by and to the said owner, Gertrude L. Reed, her heirs and assigns, for such use or uses as she or they may subsequently determine.

*Id.* at 289, 139 A.2d 339.

It seems clear that the plaintiffs bought their lots in reliance upon the recorded plat of "Wild Rose Shores." The appellants make a point of the absence of any designation of the lake area as a "community" area. The plat is rather scantily marked. What are evidently streets, roads or ways are not designated as such. An examination of the plat shows that they could not sensibly be regarded as anything else, and some of the wording in the "Notes" endorsed on the plat shows that this is what they are or are meant to be. Thus, the description of the garage area (for which there would be no reasonable use without roads) refers to a strip marked simply "20'" as "the 20' Road." Likewise, the reservation against dedication to the public speaks of the "streets and roads laid out on this Plat," and the more comprehensive reservation at the end of that note speaks of the "roadway" at the southern end of the tract. This same reservation also speaks of the dock or pier at the end of the roadway and denies dedication to the public or to the public use or to any lot owner or owners. Other streets and roads are stated not to be dedicated to the public or to the public use but to be reserved by the owner to the use of herself, her heirs and assigns "and to the mutual use and benefit of the owners abutting on said streets and roads." What are evidently piers are not designated as such.

Regardless of the absence of any such legend as "community beach" on the lake area, there is no readily perceptible reason for the ten-foot right of way between what appears to be the main road of the development and the lake area except to give the owners or occupants of interior lots on this waterfront development access to boating, bathing, swimming and fishing.

*Id.* at 291, 107 A.2d 82.

Returning to the case at hand, we conclude that the absence of a legend does not establish that the parties did not intend to convey an easement. In *Klein,* the lack of a legend designating the right of way to a "community area" did not prohibit the Court from granting the plaintiffs such a right of way. As the Court of Appeals held in *Boucher,* 301 Md. at 694, 484

A.2d 630, "the Bouchers have an implied easement over George Street by virtue of the reference in their deed to the Piper Estates plat, which **depicts** George Street as a right of way to their property." (Emphasis added). As is evident from the holding in *Boucher*, a deed which refers to a plat depicting a right of way may demonstrate an intention to convey an easement.

### (5) Combination of Lots

Appellees contend that Lot 18 no longer exists, as it merged into the remaining property owned by the Samorajczyks, and the circuit court, therefore, erred in finding that an implied easement appurtenant to Lot 18 was created when ARC first conveyed Lot 18. Appellees state that "any easement appurtenant to Lot 18 is extinguished because Lot 18 no longer exists and the Samorajcks may not use any easement that ran to Lot 18 in their capacity as the owners of other lots." Appellees assert that Anne Arundel County law requires the merger of the Samorajczyks' lots and, therefore Lot 18, the lot to which the easement ran, no longer exists.

Appellants respond that the plats show an intention to dedicate the Strip to use by more than a single landowner. Appellants argue that "nothing in Art. 21 § 5–114, or its progeny, or in any of the deeds that are alleged by the [a]ppellees to have conveyed, by operation of that law, an interest in one-half of the [Strip] to one of the private parties named in such deeds, sets forth any 'express condition' that would 'extinguish' the easement that was created by the 'foundational' 1927 plats."

In *Boucher*, the Court of Appeals addressed this very issue. In *Boucher*, the appellees challenged the conclusion that Boucher had an implied easement. 301 Md. at 692–93, 484 A.2d 630. Appellees argued that former § 5–114 of Art. 21 compelled a different result and that former § 5–114 of Art. 21 "operates to grant '*all* the right, title and interest' of the grantor of the conveyed property in any street bounding upon the property. Because a conveyance of property bounding on a street conveys all right, title, and interest to the center of

the street, and because an easement is an 'interest' in the street," in *Boucher*, appellees contended that the "grantor was statutorily precluded from creating an easement in the street to the grantee." *Id.* at 693, 484 A.2d 630. The Court noted the conflict, stating: "This reasoning would of course effectively abrogate the common law principle that a conveyance of property with reference to a recorded plat creates a rebuttable presumption that rights of way depicted on the plat are intended as easements." *Id.* The Court resolved the conflict, stating:

> To resolve the apparent conflict between these two rules, we must examine the purpose of each and reconcile them if possible. The purpose of former § 5–114 is to assure landowners that they will have access to streets bounding on their land by granting to them title to the center line of the street while recognizing an easement in the other half of the street. The implied easement by plat reference rule has an identical purpose, although it accomplishes its objective by creating an easement to the whole of the street rather than by granting fee simple title to part.

*Id.* at 693–94, 484 A.2d 630.

Simply put, we disagree with appellees' contention that the Lindsay Trust's fee simple ownership of the Strip extinguished the easement by operation of former Art. 21, § 5–114's effect. As the circuit court correctly found: "In 1976, when the Talbots conveyed their right, title and interest to the Lot 20 and 21 portions of the Strip, they did not (and could not) extinguish the Lot 18 owners' right to use the Strip to access Carrollton Road. Instead, the Solomons purchased title to the Lot 20 and 21 portions of the 10 Foot Strip from the Talbots *subject to that easement.* The Solomons' several purchases merely reduced the number of servient tenements from four to one."

For all of the reasons set forth above, the circuit court properly found that the Lindsay Trust holds all right, title and interest in and to the Strip subject to an easement appurte-

nant to Lot 18 to use the Strip for ingress and egress to Carrollton Road.[29]

**JUDGMENTS OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. COSTS TO BE PAID 50% BY APPELLANTS AND 50% BY APPELLEES.**

ATTACHMENT

---

**29.** Appellees contend that the original purpose of the Strip was to provide access from Lots 18 and 21 to Carrollton Road, but Lot 18 no longer requires an easement by necessity as Lot 18 now has access to Carrollton Road. As appellants point out, however, "[a]n easement created by dedication or by deed, of course, is not dependent on 'necessity.'"

**ANNAPOLIS ROADS**
PLAT A
ANNE ARUNDEL CO MD
SURVEYED BY J REVELL CARR C.E.
JULY 1927 ANNAPOLIS MD
SCALE 1"=50'